IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| AMKOR TECHNOLOGY, INC., a Delaware Corporation, ) | |
| ) | CIVIL ACTION NO.: 02-3156 |
| Plaintiff/Petitioner, ) | |
| ) | |
| v. ) | |
| ) | |
| ALCATEL BUSINESS SYSTEMS, a French Corporation, ASSURANCES GENERALES DE FRANCE IART, a French Corporation, and ALCATEL MICROELECTRONICS N.V., a Belgian corporation ) | |
| ) | |
| Defendants/Respondents. ) | |

**AMKOR TECHNOLOGY, INC'S MEMORANDUM
IN RESPONSE TO COURT'S NOVEMBER 26 ORDER**

**SUMMARY OF ARGUMENT**

The giant French conglomerate Alcatel[1] is playing a shell game.  Amkor Technology,

Inc. ("Amkor"), a West Chester, Pennsylvania-based company, entered into a contract with

Alcatel Microelectronics, Inc. ("AME"), a subsidiary of Alcatel, to sell custom semiconductor

products for use in cell phones.  This contract very specifically limited dispute resolution over

the sale to AAA arbitration in Philadelphia.  This term was plainly crucial to the bargain

Amkor struck:  it did not want to risk a technical litigation in a foreign language in a foreign

court.  Yet despite this explicit bargain, Alcatel comes to court under a different shell -- that of

---

[1] Alcatel's website describes the company as "the world's leading supplier of telecommunication infrastructures", http://www.alcatel.com/apropos/?_requestid=92550, and states that it employs 99,000 individuals active in over 130 countries, http://www.alcatel.com/apropos/Alcatel_Corporate_2002_5.pdf, at 5.  The website further claims that Alcatel had 2001 revenues of 25.35 *billion* euros, equivalent to over $25,000,000,000, a full *19%* of which (almost $5 billion) was earned in the United States. *Id.* at 7.

Alcatel Business Systems ("ABS")[2] – and tries to walk away from its arbitration bargain. Thus, the lawsuit Amkor faces in France is brought not by AME – the purchaser – but by its sister corporation who received the benefit of Amkor's production of custom semiconductors.

Neither Pennsylvania law nor Third Circuit law allows parties so easily to evade an arbitration clause, and the motion of ABS and AGF – ABS's insurer subrogee – should not be granted. To the contrary, a party that accepts the benefit of a contract incorporating an arbitration clause – as ABS accepted the benefit of Amkor's custom chip manufacturing – must also accept the burden of the arbitration clause as a matter of estoppel. A party estopped to deny an arbitration agreement is similarly estopped to challenge personal jurisdiction in the forum specified in the contract.

Amkor has an entirely reasonable basis to believe that discovery will firmly establish its right to proceed in this jurisdiction against these parties. First, it believes that discovery will show that ABS is estopped to deny the applicability of the arbitration clause to itself. The most obvious evidence that AME was acting on ABS' behalf is that no claim has been asserted by ABS against AME. In fact, AME is so untroubled by this whole situation that it has not even bothered to plead to this case. Were ABS and AME acting even remotely like arm's length parties, ABS would be seeking a remedy from AME. More likely, AME was no more than ABS's purchasing agent. Discovery is needed to establish the facts necessary to establish estoppel, and therefore, personal jurisdiction.

Second, discovery is also necessary to establish personal jurisdiction on the alternative basis of minimum contacts. As noted *supra* at 1 n.1, Alcatel claims sales of almost five billion dollars ($5 billion) in the United States. It is certainly reasonable to believe that some of that revenue was derived here in Pennsylvania from the subsidiary at issue. Inasmuch as ABS and

---

[2] ABS and AGF attempt to make something out of the fact that *after* both this petition and the French litigation was commenced, AME was sold by Alcatel to a third party. Obviously, the relevant inquiry is what the situation was at the time of the underlying facts.

AGF presented (arguably incompetent) outside evidence in support of their motion to dismiss, Amkor should be allowed to develop evidence – now wholly within the possession of Defendants – to respond to Defendants' claims of no contacts with this forum.

Neither of Defendants' alternative arguments on comity and *forum non conveniens* justify dismissal. The French decision cited by Defendants is an interlocutory ruling solely on French law by a judge of the Paris Commercial Court that is neither final nor worthy of this Court's discretionary deference. At most, as defendants concede, the decision to extend comity is subject to this Court's sound discretion, and should be denied when necessary to protect jurisdiction or an important public policy. Amkor specifically asks this Court to protect the jurisdiction agreed to by contract, and to support the strong public policy in favor of arbitration and in providing a forum to United States citizens who bargain for an American forum in a commercial agreement.

Defendants' *forum non conveniens* argument again begs the question of whether Defendants are bound by the contract. If they are, then they are similarly bound by the forum selection clause designating this venue as the proper forum for resolution of disputes.

In summary, Defendants' motion should be denied, or at least stayed pending reasonable discovery by Amkor.

## BACKGROUND

On May 22, 2002, Petitioner Amkor Technology, Inc. ("Amkor"), brought a Petition for Order Compelling Arbitration to compel Respondents Alcatel Microelectronics ("AME"), Alcatel Business Systems ("ABS"), and Assurances Generales De France Iart ("AGF"), to arbitrate the dispute among the parties, particularly, all of the claims made by ABS and AGF in the lawsuit filed on March 18, 2002 against Amkor in the Paris Commercial Court in France (the "French Lawsuit").

Amkor is a Delaware corporation based in West Chester, Pennsylvania. Petition ¶ 1. Amkor is a semiconductor industry manufacturer of silicon wafers and other products.

On November 5, 1999, Amkor and AME entered into an agreement whereby it was agreed that Amkor would perform manufacturing services for AME (the "Agreement").[3] Under the terms of the Agreement, Amkor manufactured components for mobile telephones to AME's specifications. AME, in turn, supplied the components manufactured by Amkor to its sister company, ABS. AGF purportedly provides insurance coverage to ABS.

Section 16 of the Agreement contains a broad arbitration clause:

**Section 16.1 <u>Arbitration of Disputes</u>.**

(a) Any controversy, dispute or claim arising out of, in connection with, or in relation to the interpretation, performance or breach of this Agreement, including any claim based on contract, tort or statute, shall be settled, at the request of any Party, by arbitration conducted in Philadelphia, Pennsylvania, or such other location upon which the Parties may mutually agree, before and in accordance with the then-existing Rules of Commercial Arbitration of the American Arbitration Association ("AAA"), and judgment upon any award rendered by the arbitrator may be entered by any State or Federal court having jurisdiction thereof.
(b) The Parties hereby consent to the jurisdiction of an arbitration panel of the courts located in, and venue in, Philadelphia, Pennsylvania, with respect to any dispute arising under this Agreement.
(c) Any controversy concerning whether a dispute is an arbitrable dispute hereunder shall be determined by one or more of the arbitrators selected in accordance with Section 16.3.
(d) The parties intend that this agreement to arbitrate be valid, specifically enforceable and irrevocable.

**Section 16.2 <u>Initiation of Arbitration</u>.**

A Party may initiate arbitration hereunder by filing a written demand for arbitration with each other Party to the dispute and with the American Arbitration Association (AAA). Arbitration hereunder shall be conducted on a timely, expedited basis.

**Section 16.3 <u>Selection of Arbitrator</u>.**

Any Arbitration shall be held before a single arbitrator, who shall be selected in accordance with the procedures of the American Arbitration Association (AAA), and shall be a member of the Large Complex Case Panel with significant intellectual property (patent and copyright) law and semiconductor manufacturing experience. If the Parties are unable to agree on a single arbitrator, then each of the Parties shall select an arbitrator

---

[3] A copy of the Agreement was submitted as Exhibit B to the Scherr Affidavit filed in support of the motion to dismiss.

and such arbitrators shall select a third arbitrator.  Such arbitration shall then be held before three arbitrators.

**Section 16.4  Awards.**

      The arbitrator(s) may, in its discretion, award to the prevailing Party in any arbitration proceeding commenced hereunder, and the court shall include in its judgment for the prevailing Party in any claim arising hereunder, the prevailing Party's costs and expenses (including expert witness expenses and reasonable attorneys' fees) of investigating, preparing and presenting such arbitration claim or cause of action.

The Agreement also provides for governing law in Section 17.7:

      THIS AGREEMENT SHALL BE GOVERNED BY THE LAWS OF THE COMMONWEALTH OF PENNSYLVANIA, U.S.A., WITHOUT REGARD TO THAT STATE'S LAW RELATING TO CONFLICTS OF LAW.  THE UNITED NATIONS CONVENTION ON THE INTERNATIONAL SALE OF GOODS SHALL NOT APPLY TO THIS AGREEMENT OR ANY TRANSACTIONS CONTEMPLATED HEREBY.

In early 2001 a dispute arose between Amkor and AME involving the alleged failure of certain mobile telephone components manufactured by Amkor under the Agreement. Specifically, AME claimed mobile telephones incorporating components manufactured by Amkor failed when used in high temperature–high humidity regions.  Amkor attributes any problems arising from its products to defects in the design specifications provided by AME and disclaims any liability.  AME imputes the alleged problems to Amkor claiming components purchased from other manufactures did not evidence similar problems.

On March 18, 2002, ABS and AGF commenced the French Lawsuit.  The French Lawsuit is based upon the dispute between Amkor and AME over the mobile telephone components.  In fact, ABS and AGF reference the transaction between Amkor and AME as the source of the allegedly problematic components.  While the specific details of the relationship and transaction between AME and ABS are unknown, it is clear ABS received the components manufactured by Amkor directly from AME.  Because the claims brought by ABS and AGF in the French Lawsuit fall under the arbitration provisions of the Agreement, Amkor filed its Petition to properly bring the dispute among the parties to arbitration.

## ARGUMENT

### I.  PLAINTIFF SHOULD BE ALLOWED DISCOVERY BEFORE THIS COURT CONSIDERS DEFENDANTS' MOTION TO DISMISS

Defendants ABS and AGF seek to dismiss Amkor's Petition on two grounds warranting discovery. First, ABS and AGF make the claim that they were not signatories to the agreement containing the arbitration clause invoked by Amkor in its Petition, and therefore, the Petition should be dismissed. Second, defendants argue this Court lacks personal jurisdiction over them.

Both arguments are predicated solely on minimal, unreliable factual representations set forth in two affidavits, one each from ABS and AGF. Because these arguments are fact based, discovery is necessary to adequately to assess and respond. Amkor served Interrogatories and Document Requests on both ABS and AGF, responses to which are due December 9, 2002. Absent an opportunity for discovery prior to responding and thus prior to this Court considering defendants' Motion to Dismiss, Amkor will be unfairly prejudiced.

### A.  Discovery Is Necessary To Respond To Defendants Claim That They Are Not Subject To The Arbitration Clause

In their motion, defendants claim Amkor's Petition should be dismissed because they were not signatories to the agreement containing the arbitration clause. The law is clear however that both ABS and AGF can be compelled to arbitrate even though they did not sign the Agreement that is the subject of Amkor's Petition.

A party can be bound by an arbitration provision in a contract it did not sign either through equitable estoppel, *see E.I. DuPont de Nemours & Co. v. Rhone Poulenc Fiber & Resin Intermediates, S.A.S.*, 269 F.3d 187, 199-200 (3d Cir. 2001) ("courts have held non-signatories to an arbitration clause where the non-signatory knowingly exploits the agreement containing the arbitration clause despite having never signed the agreement"); through assignment as a matter of law, *see Technetronics, Inc. v. Leybold-Graeus GmbH*, No. CIV. A.

-6-

93-1254, 1993 WL 197028 (E.D. Pa. June 9, 1993), or through the commonality of ABS and AME as both alter ego corporations of Alcatel. *See Kaplan v. First Options of Chicago, Inc.*, 19 F.3d 1503, 1520-1521 (3d Cir. 1994). AGF, as ABS' insurer, is subject to the same rights and duties as its insured with respect to the rights of its insured. *Zurich-American Ins. Co. v. Eckert*, 770 F. Supp. 269, 272 (E.D. Pa. 1991).

ABS and AGF do not address these theories in their papers other than to state that ABS and AME have always been distinct entities and to assert that ABS is not an alter ego of AME because subsequent to the time period relevant to the case at bar, ST Microelectronics acquired AME. Clearly there is not enough evidence before the Court to make a determination on any of the theories. Likewise, it is impossible for Amkor to adequately address the argument on the motion to dismiss without discovery on these issues.

More importantly, if ABS and AGF are bound by the arbitration agreement, their jurisdictional argument fails as a matter of law. As described above and more fully in the Petition, AGS and AGF were direct beneficiaries of the Agreement, which contained the arbitration and forum selection clause at issue. If AGS and AGF are bound by the arbitration provision, they cannot escape its mandating a Pennsylvania forum.

When faced with an identical factual situation, the Second Circuit had no difficulty finding that non-signatories who were bound to an arbitration agreement were also bound by its forum selection clause and could not claim lack of jurisdiction. In *American Bureau of Shipping v. Tencara Shipyard S.P.A.*, 170 F.3d 349 (2d Cir. 1999), a group of owners entered into a contract with Tencara for the construction of a ship sufficient to qualify for approval by the American Bureau of Shipping ("ABS"), a classification society. To obtain classification for the ship, Tencara contracted with ABS for inspection and ultimate classification. The ABS-Tencara agreement provided for the arbitration of disputes in New York. *Id.* at 351.

After the owners received the ship, it suffered serious hull damage as a result of defective design and poor construction. The owners, their insurers, and Tencara sued ABS in French and Italian courts. ABS then sought to compel arbitration in New York. The district

-7-

court held that while Tencara was required to arbitrate its claims against ABS, the owners and their insurers were not required to arbitrate. On appeal, the Second Circuit held that the owners and their insurers had to arbitrate their dispute against ABS.

The court first considered the owners' challenge to personal jurisdiction. The Court held that the question was inevitably decided by the question of whether the owners were subject to the arbitration agreement between ABS and Tencara:

> [I]f the Owners are estopped from denying their obligations under the arbitration agreement between Tencara and ABS, it follows that they are also estopped from asserting a lack of personal jurisdiction based on that agreement. There is no good reason to read the equitable theory of estoppel to allow the defense of "no personal jurisdiction" while barring the defense of "no duty to arbitrate." With the owners estopped from denying personal jurisdiction, the law regards such jurisdiction as established in litigation between these parties.

*Id.* at 352. The court then examined whether the owners were in fact estopped from denying their obligation to arbitrate. It concluded that they were in fact estopped, and held that the owners were required to arbitrate their claims against ABS. *Id.* at 353.

In the case at bar, Amkor has alleged that ABS and AGF are bound by the Agreement through their conduct or through their commonality with Alcatel. Amkor has served discovery which seeks information relevant to the question of whether ABS and AGF are so bound. As in *Tencara*, if the movants must arbitrate pursuant to the Agreement, then "it follows that they are also estopped from asserting a lack of personal jurisdiction based on that agreement." *Id.* at 352. Because the question of whether they are so bound cannot be addressed without the discovery Amkor has already sought, the court should defer consideration of movants' personal jurisdiction argument.

### B.     Discovery Is Necessary To Adequately Respond To Defendants Challenge To Personal Jurisdiction

Even apart from the question of the applicability of the arbitration provision, discovery is necessary to determine whether there is personal jurisdiction over ABS and AGF.

In support of their claim that there is no jurisdiction, ABS and AGF claim neither company has had any contacts with Pennsylvania. Defendants rely exclusively on the affidavits of a representative of each company in support of their claims. These affidavits and defendants' reliance thereon are problematic for two reasons. First, the affidavits fail to address all issues relevant to personal jurisdiction. Instead, the affidavits make bald assertions unsupported by corroborating evidence. For example, the ABS affidavit, while stating that ABS does not "do any business" in Pennsylvania, fails to rule out the possibility that ABS sells products in Pennsylvania. Similarly, while the ABS affidavit claims that "No employee or agent of ABS ever traveled to Pennsylvania or anywhere else in the United States *in connection with the claim that ABS has against* AMKOR," (ABS Aff. ¶ 6 (emphasis added)) it is silent as to such travels unrelated to ABS's claim. AGF makes the identical statement concerning its claim, and yet leaves open the question of other contacts. Moreover, the affidavits fail to address other bases for personal jurisdiction such as telephone or mail contact with the forum.

Second, the affidavits are unreliable in that they affidavits fail to meet the requirements of 28 U.S.C. § 1746, which provides in pertinent part:

> Wherever, under any law of the United States or under any rule, regulation, order, or requirement made pursuant to law, any matter is required or permitted to be supported, evidenced, established, or proved by the sworn declaration, verification, certificate, statement, oath, or affidavit, in writing of the person making the same  . . ., such matter may, with like force and effect, be supported, evidenced, established, or proved by the unsworn declaration, certificate, verification, or statement, in writing of such person which is subscribed by him, as true under the penalty of perjury, and dated, in substantially the following form:
>
> (1) If executed without the United States: "I declare (or certify, verify, or state) under penalty of perjury *under the laws of the United States of America* that the foregoing is true and correct. Executed on (date).
>
> (Signature)"

28 U.S.C. §1746 (emphasis supplied).

While both affidavits appear to have been prepared for notarization, neither includes the signature of a notary public. Thus, as unsworn declarations, both are required to include the

declaration "under penalty of perjury *under the laws of the United States of America . . . .*"
Neither does so. As such, neither is actionable under United States law if false. Absent this
safeguard, the affidavits are incompetent. *See Nissho-Iwai Am. Corp. v. Kline*, 845 F.2d 1300,
1306-07 (5th Cir. 1988) (affidavit not in substantial conformity with § 1746 properly
disregarded by District Court).

     In light of the fact based dismissal arguments made by ABS and AGF and the paucity
and unreliability of evidence offered in support, Amkor should be given the opportunity to
discover relevant information concerning whether defendants are subject to personal
jurisdiction and respond to the motion to dismiss prior to this Court's consideration of the
motion. It is well-settled law that where a preliminary challenge is made as to a jurisdictional
fact, discovery should be permitted to obtain factual information in support of the moving
party's assertion of proper jurisdiction.

     In Pennsylvania, for instance, the law is clear that where a preliminary objection raises
an issue of fact, "the court shall take evidence by depositions or otherwise." Pa. R. Civ. P.
1028(c)(2). Specifically, a preliminary objection to jurisdiction "cannot be determined from
facts of record" and requires further evidence before a determination can be made. Pa. R. Civ.
P. 1028 (c)(2) note. *See also Holt Hauling & Warehousing Sys., Inc. v. Aronow Roofing Co.*,
454 A.2d 1131 (Pa. Super. Ct. 1983) (vacating lower court's order of dismissal for lack of
jurisdiction and held that lower court was obligated to allow the parties a reasonable time for
discovery so that evidence could be presented to resolve the dispute); *Gall v. Hammer*, 617
A.2d 23, 24 (Pa. Super. Ct. 1992) (*citing Holt Hauling* in holding that dismissal was improper
where factual allegations by the defendant asserting lack of jurisdiction were the only evidence
supporting their motion).

     The Third Circuit has similarly adopted this approach and follows the general rule that
unless plaintiff's claim is "clearly frivolous," the district court should allow discovery on
jurisdiction to enable the plaintiff to demonstrate minimum contacts by the defendant with the
forum state sufficient to establish in personam jurisdiction. *See Compagnie des Bauxites de*

-10-

*Guinee v. L'Union Atlantique S.A. D'Assurances*, 723 F.2d 357, 362 (3d Cir. 1983) (dismissal improper where discovery on issue of jurisdiction was precluded by issuance of a protective order). *See also Market Dev. Corp. v. Flame-Glo, Ltd.*, Civil Action No. 88-9555, 1989 U.S. Dist. LEXIS 3436, at *2 (E.D. Pa. Apr. 5, 1989) (motion to dismiss for lack of personal jurisdiction denied because "plaintiff needs more than bare assertions" and must be afforded opportunity for discovery to defend against motion); *Mulhern v. McGahn, Fries & Miller*, Civil Action No. 88-6980, 1988 U.S. Dist. LEXIS 13819, at *3 (E.D. Pa. Nov. 23, 1988) (motion to dismiss for lack of personal jurisdiction deferred pending discovery by plaintiff).

In deciding whether discovery of a jurisdictional issue should be permitted, courts often consider whether discovery would lead to a more accurate judgment regarding jurisdiction than a determination based solely on a defendant's affidavit. *See* 5A Charles A. Wright & Arthur R. Miller, Federal Practice and Procedure: Civil 2d §1351 at 256-259 (2d ed. 1990). Because the plaintiff bears the burden of establishing jurisdiction and pertinent facts relating to personal jurisdiction are often far beyond a plaintiff's knowledge, courts often accord the plaintiff broad discretion to conduct such discovery. *Id.* This is especially so in a case such as the one at bar where a plaintiff seeks discovery relating to whether a corporate defendant conducted business in a forum state. *See Compagnie des Bauxites*, 723 F.2d at 362 (noting that a Pennsylvania court will generally allow discovery where the plaintiff, who was completely unfamiliar with the corporate defendant, was not given an opportunity to conduct discovery on the jurisdictional issue).

In this case, defendants' Motion to Dismiss for lack of personal jurisdiction relies almost exclusively on two brief identical affidavits. In order to resolve the jurisdictional issue, those affidavits would essentially have to "rule out" the possibility that ABS and AGF are subject to jurisdiction in Pennsylvania. *See United Phosphorous Ltd. v. Angus Chem. Co.*, No. 94 C 2078, 1996 U.S. Dist. LEXIS 203, at *20 (N.D. Ill. Jan. 9, 1996) (failure of defendant's affidavit in support of his motion to dismiss for lack of personal jurisdiction to address contacts with Illinois and relationship with co-defendant militated in favor of denying the motion absent

additional evidence).  Here, the affidavits fail to rule out the possibility that ABS and AGF are subject to the personal jurisdiction in the Commonwealth of Pennsylvania, failing in both their detail and their reliability.  Accordingly, discovery is necessary for Amkor to address and defend against defendants' claims of lack of minimum contacts.

## II.    CONSIDERATIONS OF INTERNATIONAL COMITY DO NOT REQUIRE THAT THIS COURT DISMISS THE PETITION

Defendants ABS and AGF contend that this Court should extend comity to the French proceeding.  Defendants further contend that Amkor has engaged in forum shopping by bringing a motion to compel arbitration in this Court.  In fact, it is ABS and AGF that are engaging in forum shopping by preemptively bringing suit in French court in order to deprive Amkor of its contractual right to arbitrate in this forum while seeking to obtain a more favorable judgment.  Thus, resolution of the dispute between the parties should be decided by arbitration and comity need not be extended to the French proceeding.

### A.    International Comity is Discretionary

International comity is "the informal and non-mandatory courtesy with which the courts of one sovereign may give effect to the laws and judicial decisions of another." *See Calzaturificio Rangoni v. United States Shoe Corp.*, 868 F. Supp. 1414, 1419 (S.D.N.Y. 1994). Comity "is not of the rule of law, but one of practice, convenience and expediency ... comity does not achieve the force of an imperative or obligation." *Somportx Ltd. v. Philadelphia Chewing Gum Corp.*, 453 F.2d 435, 440 (3d Cir. 1971); *see also Pravin Banker Assocs., Ltd. v. Banco Popular Del Peru*, 109 F.3d 850, 854 (2d Cir. 1997).  Thus, international comity is within the discretion the court and should not be given effect if the laws of foreign forum would be "contrary to the policies or prejudicial to the interests of the United States." *Pravin*, at 854 (denying motion to dismiss because extending comity would be contrary to United States policy); *see also Republic of the Philippines v. Westinghouse Elec.* Corp., 43 F.3d 65, 75

(3d Cir. 1994) ("[c]omity cannot be the source of a disability that *prevents* a district court from having the power to address wrongdoing that impacts a domestic court").

Courts have recognized a district court's power to issue an anti-suit injunction enjoining litigants over which it has personal jurisdiction from pursuing duplicative litigation in a foreign forum. *See Younis Bros. & Co., Inc. v. CIGNA Worldwide Ins. Co.*, 167 F. Supp. 2d 743, 745-46 (E.D. Pa. 2001) (granting anti-suit injunction because the foreign litigation was vexatious and duplicative, threatened the court's jurisdiction, threatened the nation's strong public policy in favor of finality of judgments and the party seeking the injunction met the traditional elements for injunctive relief). The Third Circuit has held that the exercise of this power requires a balancing in each case. *Westinghouse,* 43 F.3d at 77-78.

Defendants argue that the Third Circuit adopts a restrictive approach in granting injunctions on foreign litigation and will approve such injunctions only to protect jurisdiction or an important public policy.[4] *General Elec. Co. v. Deutz AG*, 270 F.3d 144, 161 (3d Cir. 2001). However, protection of public policy is exactly what Amkor contends is at issue. Defendants ABS and AGF are attempting to circumvent the arbitration provision under the agreement between Amkor and AME. Federal policy in the United States strongly favors arbitration for resolution of disputes. *See Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614, 631 (1985). Thus, defendants ABS and AGF are merely attempting to forum shop in order to gain a more favorable judgment while depriving Amkor of their contractual rights to a Pennsylvania arbitral forum in contravention of public policy.

---

[4] Cases cited in defendants' motion to dismiss are factually distinguishable. *See Parashos v. YBM Magnex Int'l, Inc.*, 130 F. Supp. 2d 642, 647 (E.D. Pa. 2000) (action was overwhelmingly dominated by foreign interests and there were eleven suits pending in foreign forum); *Supermicro Computer Inc. v. Digitechnic, S.A.*, 145 F. Supp. 2d 1147, 1151 (N.D. Cal. 2001) (plaintiff participated in foreign action for more than one year and brought action in district court after receiving an adverse rule in foreign court).

**B.    The Arbitration Agreement Preexisted the Litigation in France**

In early 2001, a dispute regarding components sold by Amkor to AME arose out of the Agreement. Despite the arbitration provision in the Agreement, defendants ABS, an apparent transferee of the components from sister company AME, and ABS's insurer, AGF, brought suit against Amkor before the Paris Commercial Court in France in March 2002. Amkor sold the components at issue to AME, not ABS. Thus, AME should be litigating this dispute in accordance with the contractual provisions. However, as a contractual beneficiary or assignee, ABS is bound by the agreement and should also litigate its disputes with Amkor in arbitration rather than in a French court.

The French suit brought by ABS and AGF is merely a way to deprive Amkor of their right to arbitrate under the agreement and constitutes a violation of public policy. Defendant ABS has derived benefits under the agreement by obtaining the custom components for use in its business. If ABS can derive benefits from the agreement and allege that it has been injured as a result of Amkor's sale to AME under the agreement, it must be bound by the provisions of that agreement that provide for arbitration. ABS and AGF may not file suit in French court first, intentionally failing to make AME a party, to avoid the arbitration provision. ABS and AGF simply want to avoid the contractual clauses and the governing American law that will be unfavorable to them. This forum shopping should not be permitted and should not deprive Amkor of its rights under the Agreement.

**C.    American Law Governs this Dispute and Defendants may not Avoid this Law by Filing a Pre-emptive Action in a Foreign Court.**

As discussed above, even though defendants ABS and AGF are non-signatories to the Agreement, Amkor has competently plead that they are estopped from denying their obligation to arbitrate under the agreement, which provides that the agreement shall be governed by the laws of Pennsylvania.

In *American Bureau of Shipping v. Tencara*, 170 F.3d at 353, the non-signatory owners and insurers of a yacht, who had first filed an action in France, were held to be bound by the

-14-

arbitration provision in an agreement between a ship classification society and yacht builder. The insurers argued that the French court hearing their suit would not recognize the arbitration of their claims. *Id.* at n.4. However, the court stated that they "express no view as to the possible effect under French law of this judgment or of a subsequent arbitration award. Under American law, the Underwriters are clearly required to arbitrate, and that is the only issue before us today." *Id.*

Similarly, the only matter before this Court is whether ABS and AGF should be compelled to arbitrate its dispute with Amkor. This matter is clearly governed by American law; therefore, comity need not be extended to the French proceeding which has nowhere addressed American or Pennsylvania law. The fact that defendants ABS and AGF first filed suit in France against Amkor should have no effect on this court's decision regarding Amkor's motion to compel arbitration.

      **D.**    **The French Court Decision on the Motion to Dismiss Need Not Be Given Deference.**

Amkor has filed an interlocutory appeal regarding whether the Paris Commercial Court has jurisdiction and whether ABS and AGF's claims lack merit. Thus, the Paris Commercial Court's decision is not a final decision. Parallel proceedings are ordinarily permitted to proceed simultaneously, until one has reached a final judgment on the merits, at which time the decision, if recognized, becomes *res judicata*. *General Elec.*, 270 F.3d at 157. Here, the French court has only made an interlocuting ruling that ignored U.S. law. There is no basis, and certainly no basis at this time, to dismiss this action based on that ruling.

**III.**    **THE COURT SHOULD NOT DISMISS ON GROUNDS OF *FORUM NON CONVENIENS***

The final ground upon which ABS and AME base their motion is the doctrine of *forum non conveniens*.

Dismissal may be appropriate where plaintiff's chosen forum "imposes a heavy burden on the defendant or the court, *and where the plaintiff is unable to offer any specific reasons of*

*convenience supporting his choice.*" *Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 249 (1981)

(emphasis added). In this case, plaintiff has alleged very specific grounds supporting its choice

of forum.

First, Plaintiff is headquartered in Pennsylvania. Petition ¶ 1; Agreement at pg. 1.

Where a domestic plaintiff has filed in its own home forum, the strong presumption in favor of

plaintiff's choice of forum is given even greater weight. *E.g., Kamel v. Hill-Rom Co., Inc.*, 108

F.3d 799, 803 (7th Cir. 1997).

Second, plaintiff's choice of forum is based on the mandatory arbitration provision in

the Agreement which provides for a Philadelphia forum. Forum selection clauses are deemed

to be "prima facie valid and should be enforced unless enforcement is shown by the resisting

party to be unreasonable under the circumstances." *M/S Bremen v. Zapata Off-Shore Co.*, 407

U.S. 1, 6 (1972) (citation and quotation omitted). Movants have not met their burden of

making a "strong showing" on why the forum selection clause should be set aside.

Where courts have been faced with a forum non conveniens motion in the face of such a

forum selection clause, they have not hesitated to find that the forum was convenient. In *AAR*

*Int'l, Inc. v. Nimelias Enterprises, Inc.*, 250 F.3d 510 (7th Cir. 2001), *cert. denied sub nom*

*Vacanes Heliades S.A. v. AAR Int'l, Inc.*, 122 S.Ct. 463 (2001), an aircraft lessor sued the lessee

and sublessee for breach of the lease. The lease contained a non-exclusive venue provision for

disputes to be litigated in Illinois. The defendants moved to dismiss on several grounds,

including that they were foreign companies and that there was a pending suit between the

parties in the Greek courts. The district court dismissed. On appeal, the Seventh Circuit

reversed the dismissal and ordered that on remand the district court deny the forum non

conveniens motion. The Court of Appeals held that where the lease at issue contained a forum

selection clause, the defendants could not claim that the forum specified in the lease was

inconvenient.

Similarly, in *ACEquip Ltd. v. Am. Eng'g Corp.*, 153 F. Supp. 2d 138 (D. Conn. 2001),

the court denied a motion to dismiss a petition to appoint an arbitrator, holding that the forum

selection clause in the agreement at issue governed, even if the forum was inconvenient for the defendant. The court held that as sophisticated businesses, the parties were bound by the forum selection clause even if the usual considerations applicable in a forum non conveniens analysis would urge toward dismissal. *Id.* at 142.

ABS and AME would undoubtedly argue that although the Agreement contains the forum selection clause, it should not bind them because they are not parties to the Agreement. That would be in error. As discussed above, a company which is not a party to an agreement may be bound by its arbitration provision under certain circumstances. That analysis also applies to the forum selection clause. In *Detroit Coke Corp. v. NKK Chemical USA Inc.*, 794 F. Supp. 214 (E.D. Mich. 1992), the court considered a dispute arising out of a coke purchase agreement which contained a forum selection clause. The coke manufacturer sued the purchaser, which was a party to the contract, and the ultimate consumer. In granting a motion to transfer to the forum specified in the agreement, the court held that the presence of a party which had not been a signatory to the agreement was irrelevant — the forum selection clause had to be enforced. *Id.* at 217 & n. 2.

For all of these reasons, the court should deny the motion to dismiss for forum non conveniens.

## CONCLUSION

For the reasons discussed above, the Court should deny the motion to dismiss, or,

alternatively, defer the motion until after Amkor has obtained the discovery it needs in order to

respond.

Dated: _12.9.02_

DUANE MORRIS LLP

By: _Patrick J. Loftus_ _____

Patrick J. Loftus
PA ID. 60417
One Liberty Place
Philadelphia, PA 19103-7396
(215) 979-1367

Attorneys for Plaintiff,
Amkor Technology, Inc.

Of Counsel:

David S. Steuer (CA State Bar #127059) (pro hac vice application submitted)
Ignacio E. Salceda (CA State Bar #164017) (pro hac vice application submitted)
WILSON SONSINI GOODRICH & ROSATI
  Professional Corporation
650 Page Mill Road
Palo Alto, CA 94304-1050
Telephone:  (650) 493-9300
Facsimile:  (650) 565-5100

## CERTIFICATE OF SERVICE

I, Patrick J. Loftus, Esquire, hereby certify that a true and correct copy of the foregoing

Memorandum in Response to Court's November 26 Order, was served on the following this 9th

day of December 2002 and in the manner indicated below:

*Via Facsimile and First Class U.S. Mail:*
Louis J. Isaacsohn, Esquire
Wilson, Elser, Moskowitz, Edelman & Dicker LLP
Independence Square West
The Curtis Center, Suite 1130 East
Philadelphia, PA  19106-3308

*Via First Class U.S. Mail:*
Alcatel Microelectronics
Westering 15, B-9700
Oudenaarde, Belgium


Patrick J. Loftus, Esquire

PH2\677061.1