UNITED STATES DISTRICT COURT EASTERN DISTRICT OF PENNSYLVANIA
------------------------------------------------------------------- x
AMKOR TECHNOLOGY, INC., a Delaware Corporation,

                        Plaintiff/Petitioner,

                        v.

ALCATEL BUSINESS SYSTEMS, a French Corporation,
ASSURANCES GENERALES DE FRANCE IART, a
French Corporation, and ALCATEL
MICROELECTRONICS N.V., a Belgian corporation.

                        Defendants/Respondents.

Case No. 02-3156

------------------------------------------------------------------- x

**DEFENDANTS' ALCATEL BUSINESS SYSTEMS AND ASSURANCES GENERALES DE FRANCE IART MOTION FOR RECONSIDERATION OR, IN THE ALTERNATIVE, TO CERTIFY AN ORDER FOR INTERLOCUTORY APPEAL PURSUANT TO 28 U.S.C. §1292(B) AND INTERIM STAY**

Defendants, ALCATEL BUSINESS SYSTEMS, a French Corporation ("ABS"), and ASSURANCES GENERALES DE FRANCE IART, a French Corporation ("AGF"), by their attorneys, WILSON, ELSER, MOSKOWITZ, EDELMAN & DICKER LLP, respectfully submit this Motion for reconsideration and of this Court's Decision and Order dated August 22, 2003 (the "August 22nd Order") pursuant to Fed. R. Civ. P. 60(b) and Local Rule 7.1(g) or, in the alternative, certify the issue for interlocutory appeal under 28 U.S.C. § 1292(b) and grant an interim stay of these proceedings.

1.     Defendants ABS and AGF originally moved this Court for an order dismissing the plaintiff's, AMKOR TECHNOLOGY, INC.'s, (hereinafter "AMKOR") Petition pursuant to Fed. R. Civ. P. 12(b)(2) for lack of personal jurisdiction and Fed. R. Civ. P. 12(b)(6) for failure to state a claim upon which relief can be granted.

2.     By Order dated December 12, 2002, this Court granted AMKOR the right to conduct jurisdictional discovery. After the completion of jurisdictional discovery and the submission of

99908.1

-2-

supplemental papers, this Court issued its Opinion and Order dated August 22, 2003 (entered on August 26, 2003), denying ABS and AGF's motion to dismiss AMKOR's petition. A copy of the August 22, 2003 Order is annexed hereto as Exhibit "A."

3.　In the August 22nd Order, this Court held that ABS and AGF were bound by an arbitration clause in a contract between AMKOR and ALCATEL MICROELECTRONICS ("AME") (hereinafter the "AMKOR/AME Agreement") despite the fact that neither ABS and AGF were signatories to the AMKOR/AME Agreement nor had any role in its negotiation, formation or execution.

4.　Defendants AGF and ABS now seek reconsideration of the August 22nd Order or, in the alternative, certification of the order for an interlocutory appeal to the United States Court of Appeals for the Third Circuit and an interim stay of the proceedings.

5.　Defendants file this motion based upon several grounds. First, it is respectfully submitted that the Court misapplied the "direct benefit" estoppel standard enunciated in the Second Circuit's decision in <u>American Bureau of Shipping v. Tencara Shipyard S.P.A.</u>, 170 F.3d 349 (2d Cir. 1999). Second, the Court incorrectly relied on plaintiff's unsubstantiated "factual" assertions that ABS and AME were alter egos as grounds for applying the estoppel doctrine. Third, the Court should have dismissed the petition under the doctrine of international comity.

6.　It is submitted that this Court overextended the practice of using estoppel to bind non-signatories to an arbitration clause in a contract. In the case at bar, this Court held that "[a]t all relevant times, ABS knew that AME would ultimately contract with a third-party supplier to obtain the chips designed and requested by ABS – and that ABS would receive the benefit of the custom chips that the third party supplied." August 22nd Order, p. 7. This aspect of the Court's Order extends two principles underlying the estoppel theory well beyond the bounds set forth in <u>Tencara</u>.

-2-

99908.1

7.  First, no Court has held that simply knowing that a company would contract with a third party to provide goods satisfies the "direct benefit" component. Second, this Court's holding equivocates a non-signatory's mere receipt of any goods that were, at some point, part of a contract between others, as automatically satisfying the "direct benefit" component of Tencara.

8.  The August 22nd Order indicates that simply because ABS came to possess "custom-made Amkor chips," it received a direct benefit. August 22nd Order, p. 7. A non-signatory, however, must receive more then just the goods or services promised by one signatory to the other signatory before a "direct benefit" is conferred.

9.  Moreover, the factual assertions relied upon by the plaintiff (and the Court) as the grounds for finding a "direct benefit" were disproved by the testimonial evidence elicited during jurisdictional discovery. ABS employees confirmed that they had either never seen the Agreement or only came to learn of its existence after the problems with chips developed and the litigation ensued. They also confirmed that these "custom" chips were actually produced for ABS in the first instance by one of AMKOR's and AME's competitors, ST Microelectronics. AME had used at least two other chip suppliers besides AMKOR -- UMC and TSMC -- to manufacture the same "custom-made" chip. Thus, it is clear that there was no custom chip or "direct benefit" conferred to ABS but simply the receipt of a good in the stream of commerce.

10. The evidence further confirmed that there was no contact between ABS and AMKOR as part of the AMKOR/AME Agreement, a position AMKOR has never denied. AMKOR never submitted any documents or affidavits to dispute ABS' position.

11. In addition to the plaintiff's failure to prove a "direct benefit" to ABS as detailed above, reconsideration is warranted because the plaintiff failed to prove that the claims asserted by ABS in the

-3-

99908.1

French litigation are based upon the contractual terms of the AMKOR/AME Agreement. Courts in this Circuit will only bind a non-signatory to an arbitration clause when the non-signatory "knowingly exploits" the agreement containing the arbitration clause and commences litigation reliant upon on the terms of the agreement.

12. The Court also erred in allowing plaintiff's unsubstantiated allegations that ABS and AME were alter egos to factor into its estoppel analysis. August 22nd Order, p. 7. AMKOR introduced no evidence to dispute the fact that ABS and AME were two separate and distinct subsidiaries of Alcatel, SA maintaining all corporate formalities. The Court's Order, however, faults ABS for being a "closely related sister company" of AME when it determined that the estoppel doctrine applied. August 22nd Order, p. 7.

13. In the case at bar, there was no evidence that ABS "controlled" AME or was "active in the affairs" of AME and accordingly, the plaintiff failed to meet the threshold of proving ABS and AME were alter egos. Thus, the Court's consideration of these factors improperly impacted the estoppel analysis.

14. The Court is also asked to revisit its denial of the motion to dismiss on international comity grounds.

15. In the August 22nd Order, this Court determined that both this case and the French proceedings should proceed simultaneously. August 22nd Order, p. 11. The Court, by doing so, implicitly attacks the integrity of the French Commercial Court. The August 22nd Order will only encourage future forum shopping by U.S. residents once they have received an unfavorable ruling in a foreign jurisdiction.

-4-

99908.1

16. As set forth in the moving papers, AMKOR only filed this action after it received an unfavorable ruling from the Paris Commercial Court that rejected AMKOR's argument that the French Court lacked jurisdiction over AMKOR and that the parties were bound to arbitrate the dispute. Moreover, AMKOR delayed in proceeding with this case in the hope of obtaining a more favorable outcome on its appeal of that first ruling by the French Commercial Court. The delay prompted this Court to issue an Order dated May 22, 2003, *sua sponte,* requiring that AMKOR complete its jurisdictional discovery on an expedited basis. AMKOR's delay proved to be to its detriment as the French appellate court affirmed the decision of the French Commercial Court.

17. The fact that AMKOR pressed forward with this case after it received the unfavorable appellate decision is indicative of why international comity must apply and litigants be precluded from using competing forums until they obtain a favorable result.

18. Therefore, it is clear that under the doctrine of international comity the Court should have dismissed this case and, at a minimum, should have dismissed any aspect of AMKOR's Petition which would halt or pre-empt the French proceedings.

19. In the alternative to the defendants' request for reconsideration, the Court is requested to certify this Order for interlocutory review pursuant to 28 U.S.C. § 1292(b).

20. As set forth in the accompanying memorandum of law, the August 22nd Order involves a controlling question of law as to which there is substantial ground for difference of opinion and an immediate appeal from the order will materially advance the ultimate determination of the litigation.

21. Whether the Court properly exercised personal jurisdiction over the foreign corporate defendants is a controlling issue of law because if the Court had reached a "different resolution" (that

requested by the defendants), the case would have been dismissed. On the same basis, an appellate decision in favor of the defendants would result in the ultimate resolution of the case.

22. More importantly, there are substantial grounds for a difference of opinion regarding: (a) whether this Court overextended the "direct benefit" requirement for binding a non-signatory to the terms of an arbitration clause; (b) whether the Third Circuit also requires a finding that the claims asserted by the non-signatory arise out of the contract containing the arbitration clause as the final component of the estoppel analysis; and (c) whether this Court improperly considered ABS's status as a sister company of AME in conducting its estoppel analysis without evidence to support a finding of an alter-ego relationship.

23. The numerous questions raised regarding this Court's exercise of jurisdiction over two foreign corporations who have no contacts whatsoever with the United States based solely upon an assertion that they received a benefit from a contract that they had no role in negotiating, drafting, executing or implementing clearly warrant immediate appellate review.

WHEREFORE, it is respectfully requested that this Court grant the defendants reconsideration of the August 22, 2003 Order and upon reconsideration grant the defendants' motion seeking the dismissal of the Petition filed by AMKOR TECHNOLOGY, INC., a Delaware Corporation (hereinafter "AMKOR") pursuant to Fed. R. Civ. P. 12(b)(2) for lack of personal jurisdiction and Fed. R. Civ. P. 12(b)(6) for failure to state a claim upon which relief can be granted pursuant to Fed. R. Civ. P. 60(b) and Local Rule 7.1(g). In the alternative, it is respectfully requested that the Court certify the August 22, 2003 Order for interlocutory review by the United States Court of Appeals for the Third Circuit

pursuant to 28 U.S.C. § 1292(b) and enter an Order staying all proceedings in this matter pending a determination on the appeal.

        Respectfully submitted,

        WILSON, ELSER, MOSKOWITZ, EDELMAN & DICKER LLP

        BY:_____
            Louis J. Isaacsohn, Esquire
            Wendy D. Testa, Esquire
            Attorneys for Defendants
            ALCATEL BUSINESS SYSTEMS and
            ASSURANCES GENERALES DE FRANCE IART
            Independence Square West
            The Curtis Center, Suite 1130 East
            Philadelphia, PA 19106-3308

DATED: September 8, 2003

99908.1