IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| AMKOR TECHNOLOGY, INC., a Delaware Corporation,<br><br>　　　　Plaintiff/Petitioner,<br><br>　　v.<br><br>ALCATEL BUSINESS SYSTEMS, a French Corporation, ASSURANCES GENERALES DE FRANCE IART, a French Corporation, and ALCATEL MICROELECTRONICS N.V., a Belgian corporation<br><br>　　　　Defendants/Respondents. | CIVIL ACTION NO.: 02-3156 |

**AMKOR TECHNOLOGY, INC.'S MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANTS' MOTION FOR RECONSIDERATION OR, IN THE ALTERNATIVE, TO CERTIFY AN ORDER FOR INTERLOCUTORY APPEAL PURSUANT TO 28 U.S.C. § 1292(B) AND INTERIM STAY**

## INTRODUCTION

On August 25, 2003, this Court entered an Opinion and Order denying Defendants Alcatel Business Systems ("ABS") and Assurances Generales de France Iart's ("AGF") Motion to Dismiss pursuant to Fed. R. Civ. P. 12(b)(2) and 12(b)(6) ("Opinion"). This Court found that due to the principles of estoppel, Defendant ABS, as well as its insurer, AGF, could not avoid the effect of the arbitration clause in the agreement between Plaintiff Amkor and ABS's sister company, Alcatel Microelectronics, N.V. ("AME"). Op. at 8. Relying in part on *American Bureau of Shipping v. Tencara Shipyard S.P.A.*, 170 F.3d 349, 350 (2d Cir. 1999), this Court found that ABS received direct benefits from the Amkor/AME agreement because it played a significant role in the process of designing, purchasing, utilizing, and selling Amkor chips. Op. at 7. This Court recognized that ABS knew AME would contract with a third party supplier to obtain the chips designed and required by ABS and held that ABS should be bound by the arbitration provision in the Amkor/AME agreement by estoppel. Op. at 7-8.

This Court further rejected Defendants' arguments based on international comity and recognized that foreign and United States proceedings may proceed in parallel. Op. at 11.

Because they are dissatisfied with this Court's decision, Defendants now ask this Court to either reconsider its decision or to certify an order for interlocutory appeal pursuant to 28 U.S.C. § 1292(b). Defendants' Memorandum of Law in support of its Motion for Reconsideration ("Defs. Mem."), however, merely restates the arguments that this Court has already rejected. Furthermore, certification for interlocutory appeal is also improper because Defendants do not satisfy the extraordinary circumstances required for certification under Section 1292(b).

Accordingly, Defendants' motions should be denied.

## ARGUMENT

**I. THE COURT SHOULD NOT GRANT RECONSIDERATION OF ITS DECISION**

A motion for reconsideration will be granted only if: (1) there is an "intervening change in controlling law;" (2) there is "new evidence not previously available;" or (3) there is a need to correct a "clear error of law" or "to prevent manifest injustice." *Gen. Instrument Corp. of Delaware v. Nu-Tek Elecs. & Mfg., Inc.,* 3 F. Supp. 2d 602, 606 (E.D. Pa. 1998), *aff'd,* 197 F.3d 83 (3rd Cir. 1999); *see also Harsco Corp. v. Zlotnicki*, 779 F.2d 906, 909 (3d Cir. 1985). In their motion, Defendants fail to allege any new evidence or a change in controlling law since this Court's Order. Instead, Defendants rely on the third prong, arguing that the Court misapplied law and facts with respect to binding non-signatories to an arbitration clause as well as the doctrine of international comity. However, there is no such clear error of law or fact in the Court's Order and, therefore, Defendants' Motion for Reconsideration must be denied.

### A. The Court Made No Clear Error Of Fact or Law With Respect to Binding Non-Signatories to An Arbitration Clause

Reconsideration may only be granted where the court's decision is "clearly erroneous" as a matter of law. *United States v. $46,000 In United States Currency*, No. CIV.A. 02-6805, 2003 WL 22120261, at *2 (E.D. Pa. Sept. 9, 2003). In order to succeed in its motion, the Defendants must show that "there were facts or legal issues properly presented but overlooked by the court in its decision." *See id*. (citing *Seidman v. Am. Mobile Sys.*, 965 F. Supp. 612, 629 n.2 (E.D. Pa. 1997)). Courts must grant motions for reconsideration "sparingly" and "[d]issatisfaction with the Court's ruling is not a proper basis for reconsideration." *See Evans v. United States*, 173 F. Supp. 2d 334, 335 (E.D. Pa. 2001), *aff'd*, No. 01-3161, 2002 WL 521407 (3rd Cir. Mar. 26, 2002), *cert. denied*, 537 U.S. 887 (2002) (citing *Burger King Corp. v. New England Hood & Duct Cleaning Co.*, No. CIV.A 98-3610, 2000 WL 133756, at *2 (E.D. Pa. Feb. 4, 2000)).

Defendants argue that the Court misapplied the "direct benefit" standard underlying the estoppel theory as explained in *America Bureau of Shipping v. Tencara Shipyard S.P.A.*, 170 F.3d 349 (2d Cir. 1999). In particular, Defendants argue that the primary focus of the *Tencara* decision was that the owners of the ship were aware at the outset that the shipbuilder would be contracting with the third party for the benefit of the owners. Defs. Mem. at 3. Defendants argue that this Court overlooked this distinction and extended the estoppel theory "well beyond the bounds set forth in *Tencara*." *Id*. at 4. Defendants claim that the "direct benefit" is not satisfied just by knowing that a company will contract with a third party or from the non-signatory's receipt of goods that were part of a contract between others. *Id*. Further, Defendants argue that Amkor's allegations were (1) not supported by the evidence; (2) insufficient to show ABS and AME were alter egos and (3) irrelevant to determine whether ABS received a direct benefit. *Id*. at 5-6.

Defendants offer no new law or facts that change any of this Court's prior analysis, nor do they point to any law or facts that this Court overlooked. Defendants' arguments merely repeat their arguments submitted in support of their motion to dismiss. This is not a proper ground for a motion for reconsideration. *Evans*, 173 F. Supp. 2d at 335 (denying motion for reconsideration when arguments were "essentially recycled" from previous motion for summary judgment); *Gen. Instrument Corp.*, 3 F. Supp. 2d at 606 (denying motion for reconsideration when harm alleged was no different from the harm that existed when order was first entered); *Burger King*, 2000 WL 133756, at *3 (denying motion for reconsideration when motion "merely attempts to reargue the issues disposed of" by the prior order). Defendants simply rely upon the same cases and the same testimonial evidence already considered by this Court.

Contrary to Defendants' rehashing of the arguments, Plaintiff has adequately shown that ABS received direct benefits from the agreement between Amkor and AME. Amkor has alleged much more than that ABS received the semiconductors at issue in the stream of commerce. In summary, Amkor specifically demonstrated, *inter alia*, that (1) ABS jointly designed the semiconductors at issue with AME[1]; (2) ABS knew AME would have to have another supplier manufacture the semiconductors[2]; (3) ABS reviewed and approved the final design of the semiconductors before the design was sent to Amkor[3]; (4) ABS itself tested the prototypes of the semiconductors after they were manufactured by Amkor[4]; and (5) AME could

---

[1] Deposition of Dominique Castel, who was the head of ABS's semiconductor design team ("Castel Tr.") at 14-27. Relevant excerpts of the deposition transcripts cited were attached to the Declaration of Ignacio E. Salceda, submitted with Amkor's Supplemental Submission of July 18, 2003.

[2] Castel Tr. 18

[3] Castel Tr. 25-27.

[4] Castel Tr. 38-39; Karabadjakian Tr. 13-14. Karabadjakian is an ABS quality control engineer.

not alter the specifications without approval from ABS[5]. Thus, due to ABS's participation in the design and testing of the semiconductors, in addition to the close relationship of ABS and AME (which were both subsidiaries of same company, Alcatel), ABS, as well as its insurer AGF, should be compelled to arbitrate under the clause in the agreement between the Amkor and AME. The Court considered all of these factors and others reflecting the uniquely close relationship between ABS and AME, Op. at 6-7, and held that, like the shipowners in *Tencara*, ABS knew that AME would have to contract with a third party to manufacture the custom chips that ABS had designed and required for its product. Therefore, "[t]o permit ABS to avoid the operation of the arbitration clause by obtaining Amkor's chips through a mesne transaction involving a closely related sister company would yield an inequitable result." Op. at 7.

Unable to escape the fact that *Tencara* is on point, Defendants further argue that because courts outside the Second Circuit use a more stringent standard than *Tencara*, this Court should reconsider its decision. Defs. Mem. at 7-9. However, as the Court noted, Op. at 4-5, the Third Circuit has also held that non-signatories may be estopped from denying the effects of the provisions of an agreement including and arbitration clause, where the non-signatory has received a benefit pursuant to the agreement. *E.I. DuPont de Nemours & Co. v. Rhone Poulenc Fiber & Resin Intermediates, S.A.S.*, 269 F.3d 187, 199-200 (3d Cir. 2001). Therefore, Defendants again fail to discuss any new law or law that was overlooked in the prior proceeding that would change this Court's prior analysis. Simply not liking the Court's reliance on the *Tencara* decision is not sufficient for a motion for reconsideration.

Defendants argue that this Court's recognition that ABS and AME were "closely related" should not have played any role in the decision. Defs. Mem. at 10. This, too, is not an appropriate basis for reconsideration. Rather than basing its finding on a decision that AME and ABS were alter egos, as Defendants attempt to suggest, the Court noted that the two

---

[5] Castel 35-36.

companies were closely related and that AME was, in effect, acting as ABS's agent in connection with the purchase of the semiconductors at issue, and thus obtaining a direct benefit from the agreement between AME and Amkor. This decision was amply supported by the evidence before the Court. For example, AME and ABS jointly developed the chips in question, although ABS kept ultimate control of the specifications for the chips and AME had no power to change those specifications without the approval of ABS. Op. at 6-7; Castel Tr. 35-36. That the Court found that this relationship and ABS's ultimate control supported a finding that ABS should be bound by the arbitration provision of the agreement is far from error. In fact, the Third Circuit has made clear that a non-signatory to an agreement can be bound by a provision to arbitrate where the signatory is acting as the agent of the non-signatory. *DuPont*, 269 F.3d at 194-99; *accord Thomson-CSF, S.A. v. Am. Arbitration Ass'n*, 64 F.3d 773 (2d Cir. 1995). In this case, it is clear that, at the least, AME was acting as ABS's purchasing agent with respect to the semiconductors produced by Amkor. AME was acting on ABS's behalf and taking its directions from ABS, which retained ultimate control of the product.

For all of these reasons, the Court's decision, based both on Third Circuit precedent and instructive authority from the Second Circuit, and amply supported by the evidence in the record, is not in error.

### B. The Court Made No Error of Fact or Law With Respect to International Comity

Defendants also fail to present any new arguments surrounding their claim that the case should be dismissed on grounds of international comity. Defendants again claim that this Court misapplied the doctrine of international comity by holding that this case and the French proceedings could proceed simultaneously. Defs. Mem. at 11-12. Defendants argue that allowing simultaneous proceedings only encourages forum shopping and that French actions

arise out of French civil law and should not be subject to the arbitration clause in the Amkor/AME agreement.  Defs. Mem. at 12.

The Court has already addressed these issues.  As the Court noted, American courts have held repeatedly that "[a]s a general matter, domestic and foreign proceedings may proceed in parallel regarding similar matters."  Op. at 9-10 (citing cases).  Defendants present no reason why the general rule should not apply in this case.  In addition, because federal policy in the United States strongly favors arbitration for resolution of disputes, Defendants decision to file an action in a foreign court should be accorded no weight.  *See Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614, 631 (1985).  In this case the agreement at issue contains a carefully negotiated arbitration clause providing for arbitration in Philadelphia.  ABS and AME attempted to deprive Amkor of its right to arbitrate by bringing suit first in French court.  Thus, it is the Defendants who have attempted to forum shop, not Amkor.  Like the court in *Tencara*, this Court properly held that it would enforce an arbitration provision and not allow the circumvention of its effects by the filing of a foreign litigation.  *Tencara*, 170 F.3d at 353, n. 4.  Therefore, considerations of comity do not require that the Court defer to the French litigation.

Defendants do not dispute the law relied upon by this Court in making its decision and had already presented its arguments to this Court.  Thus, the motion for reconsideration on this issue should be denied as well.

## II. THE COURT SHOULD NOT CERTIFY ITS ORDER FOR INTERLOCUTORY APPEAL

Under 28 U.S.C. § 1292(b), a district court may only certify an order for interlocutory appeal if the order involves (1) a controlling question of law  (2) a substantial ground for difference of opinion and (3) the potential that an immediate appeal may advance the ultimate termination of the litigation.  *See Giansante v. Allan Kanner & Assocs.,* No. Civ. A 94-1770, 1994 WL 630209, *1 (E.D. Pa. Nov. 3, 1994).  In considering these three factors, "it is essential to remember that an interlocutory appeal is proper only under extraordinary

circumstances, where extended and expensive proceedings probably can be avoided." *Id*. at *2. Thus, judicial efficiency is the "sole policy underlying §1292(b)." *Id*. Certification is "the exception, not the rule, and is left to the court's sound discretion." *See Zygmuntowicz v. Hospitality Invs., Inc.,* 828 F. Supp. 346, 353 (E.D. Pa. 1993). The party seeking certification has the burden to show that exceptional circumstances "justify a departure from the basic policy against piecemeal litigation and of postponing appellate review until after the entry of a final judgment." *See Rottmund v. Cont'l Assurance Co.*, 813 F. Supp. 1104, 1112 (E.D. Pa. 1992). In this case, no such extraordinary circumstances exist.

First, whether an issue presents a "controlling question of law" depends upon whether a different resolution of that issue would eliminate the need for a trial. *Id*. (citing *Katz v. Carte Blanche Corp.*, 496 F.2d 747, 755 (3d Cir. 1974). While a dismissal here, as in any case, would obviate the need for further proceedings, Defendants have failed to argue that the circumstances in this case are so "extraordinary" that interlocutory appeal is warranted. *Design Consultants Eng'g Corp. v. Sec. Ins. Co. of Hartford*, 309 F. Supp. 1141, 1144 (W.D. Pa. 1970) (denying appeal of order denying motion to dismiss when issues did not "fulfill the extraordinary qualifications contemplated by § 1292"). Perhaps more importantly, Defendants' arguments relate more to this Court's interpretation of the specific facts of this case rather than legal issues. *See Christy v. Pennsylvania Turnpike Comm'n*, 912 F. Supp. 148, 149 (E.D. Pa. 1996) (denying appeal under § 1292 when questions presented related to fact, not law); *Genentech, Inc. v. Novo Nordisk A/S*, 907 F. Supp. 97, 99 (S.D.N.Y. 1995) (certification unavailable when controlling issues are factual, not legal). Defendants' current motion hinges far more on the application of law to facts, than on the actual "controlling question of law."

Next, the inquiry of whether there is a substantial ground for difference of opinion exists mainly to avoid dilatory appeals and promote judicial efficiency. *Giansante,* 1994 WL 630209, at *2. In the instant matter, despite the fact that Defendants dislike this Court's order, they present no contrary authority to the Court's findings and thus, judicial efficiency would not be promoted under Section 1292(b). *See Orson, Inc. v. Miramax Film Corp.*, 867 F. Supp.

319, 321 (E.D. Pa. 1994) (denying appeal under § 1292(b) when argument is "essentially a rehash of the argument" presented at earlier stage).

Lastly, the court must consider whether certification will advance the ultimate termination of the litigation. As stated above, while any motion to dismiss could potentially end the litigation, this argument alone does not amount to the "extraordinary circumstances" contemplated by Section 1292(b). ABS has had the opportunity to present its motion to dismiss and the Court has found that ABS should be a part of the arbitration. Granting an interlocutory appeal and interim stay would only lead to further delay and therefore further "frustrate the pro-arbitration policy of the FAA." *See Maye v. Smith Barney, Inc.*, 903 F. Supp. 570, 574 (S.D.N.Y. 1995) (denying appeal under § 1292(b) of order compelling arbitration in order to promote FAA policy favoring arbitration). If Defendants are granted interlocutory appeal in this matter, it would be hard to deny the right to any respondent where the motion to dismiss an arbitration petition is denied.

Because no extraordinary circumstances exist in this case, granting an interlocutory appeal and interim stay is improper. In order to expedite review of this matter, Defendants should consent to the entry of a final order granting Plaintiff's petition and compelling arbitration. A final decision in this case could then be appealed. *See* 9 U.S.C. § 16 (a)(3) (appeal may be taken from "a final decision with respect to arbitration"). *See also Green Tree Fin. Corp.-Alabama v. Randolph*, 531 U.S. 79, 80 (2000) (an order compelling arbitration is a final decision, disposing of the entire case and leaving no part of it pending before the court).

## **CONCLUSION**

For the reasons discussed above, the Court should deny Defendants' both motion for reconsideration and its alternative motion to certify an order for interlocutory appeal.

Dated:  September 29, 2003         DUANE MORRIS LLP


By:_____
    Patrick Loftus
    PA. ID. 60417
One Liberty Place, 1650 Market Street
Philadelphia, PA 19103-7396
(215) 979-1367


Of Counsel:

David S. Steuer (CA State Bar #127059) (admitted *pro hac vice*)
Ignacio E. Salceda (CA State Bar #164017) (admitted *pro hac vice*)

WILSON SONSINI GOODRICH & ROSATI
Professional Corporation
650 Page Mill Road
Palo Alto, CA 94304-1050
Telephone:  (650) 493-9300
Facsimile:   (650) 565-5100