UNITED STATES DISTRICT COURT EASTERN DISTRICT OF PENNSYLVANIA

------------------------------------------------------------------------ x

AMKOR TECHNOLOGY, INC., a Delaware Corporation,

              Plaintiff/Petitioner,

              v.

ALCATEL BUSINESS SYSTEMS, a French Corporation,
ASSURANCES GENERALES DE FRANCE IART, a
French Corporation, and ALCATEL
MICROELECTRONICS N.V., a Belgian corporation.

              Defendants/Respondents.

Case No. 02-3156

**Request Oral Argument**

------------------------------------------------------------------------ x

**REPLY MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS'
ALCATEL BUSINESS SYSTEMS AND ASSURANCES GENERALES
DE FRANCE IART MOTION FOR RECONSIDERATION OR, IN THE ALTERNATIVE,
TO CERTIFY AN ORDER FOR INTERLOCUTORY APPEAL
PURSUANT TO 28 U.S.C. §1292(B) AND INTERIM STAY**

PRELIMINARY STATEMENT

Defendants, ALCATEL BUSINESS SYSTEMS, a French Corporation (hereinafter "ABS") and ASSURANCES GENERALES DE FRANCE IART, a French Corporation (hereinafter "AGF"), submit this reply memorandum of law in further support of their motion for reconsideration of the Court's August 22, 2003 Order ("the August 22nd Order") or, in the alternative, to certify the issue for interlocutory appeal under 28 U.S.C. § 1292(b) and grant an interim stay of these proceedings.

ARGUMENT

POINT I

**PLAINTIFF'S OPPOSITION PAPERS DO NOT ADDRESS THE MISAPPLICATION OF LAW AND FACTS WITH RESPECT TO THE "DIRECT BENEFIT" STANDARD**

Plaintiff's opposition papers do not address the defendants' arguments concerning the Court's over-extension of the "direct benefit" standard in American Bureau of Shipping v. Tencara Shipyard

101545.1

WILSON, ELSER, MOSKOWITZ, EDELMAN & DICKER LLP
THE CURTIS CENTER • SUITE 1130 EAST • INDEPENDENCE SQUARE WEST • PHILADELPHIA, PA 19106
PHONE: (215) 627-6900 • FAX: (215) 627-2665

S.P.A., 170 F.3d 349 (2d Cir. 1999). Instead, plaintiff continues to rely on its version of the facts which, as demonstrated in the motion for reconsideration as well as the original submissions to the Court, were: (a) factually incorrect; and (b) even if taken as true, insufficient to satisfy the requirements for binding a non-signatory to an arbitration clause under the guidelines set forth by the Third Circuit.

1. **Plaintiff's Opposition Fails To Address The Clear Factual Distinctions Between the Tencara Case And The Case At Bar**

The facts in the case at bar simply do not rise to the level that existed in Tencara and, thus, do not meet the threshold required for binding a non-signatory under the estoppel/"direct benefit" analysis. In Tencara, the Owners received more than simply the service of the certification from the signatory (ABSF), but rather received numerous "direct benefit[s]" as a result of the certification, including the right to sail under the French flag. Something that the Tencara Court noted "would have been practically impossible," without the certification. Id. at 353. Moreover, the Owners secured lower insurance rates for the vessel as a "direct benefit" of the certification. Id. As another critical distinguishing factor, the Owners were provided with a copy of the agreement with the disputed arbitration clause more than nine months prior to the completion of the vessel. Id. at 351. Thus, the Owners were aware of the possibility of being forced to arbitrate any claims before the certification was undertaken.

None of these factors are present in the case at bar. Plaintiff does not dispute this but instead relies on other tenuous facts that the Court incorrectly held rose to the level of a "direct benefit." Plaintiff continues to argue that ABS received a direct benefit from AMKOR because ABS developed the chips at issue with AME (not AMKOR), that ABS tested the chips for defects before and during the

101545.1

manufacturing stage, AME used numerous suppliers to provide ABS with the chips at issue, and that AME could not alter the specifications without ABS's approval. Plaintiff's Opp.,[1] pp. 3-4.

None of these "facts", however, establish a direct benefit conferred from AMKOR to ABS. As noted in the motion for reconsideration, the Tencara Court held that much more than simple receipt of the actual good or service was required to apply the estoppel theory.[2] The Court, however, accepted AMKOR's argument that ABS received a direct benefit simply because ABS received a "custom made" AMKOR chip. The facts, however, indicate that this was far from what actually transpired. In fact, plaintiff did not submit a single affidavit from anyone at AMKOR to support this contention.[3] The critical facts adduced during jurisdictional discovery confirmed that:

(a)  ABS had never seen the AMKOR/AME Agreement or only came to learn of its existence after the problems with chips developed and the litigation ensued. Karabadajakian Tr.,[4] p. 12; Castel Tr., pp. 29-30; Lallement Tr., pp. 13, 15;

(b)  AMKOR's so-called "custom made" chips were actually produced for ABS in the first instance by one of AMKOR's and AME's competitors, ST Microelectronics (Castel Tr., pp. 17, 18) and AME was only a secondary supplier of the "BBGX" chip that is at issue. Castel Tr., p. 14;

(c)  AME used at least two other sub-contractor chip suppliers, UMC and TSMC, to manufacture the exact same "custom-made" chip that was provided to ABS. Castel Tr., p. 20; and

---

[1]  All references to plaintiff's memorandum of law in opposition to defendants' motion for reconsideration and/or interlocutory appeal, dated September 29, 2003 are made as "Plaintiff's Opp."

[2]  Even the Tencara Court acknowledged that there was "limited contact" between the non-signatory and the signatory and that the non-signatory had received copies of the disputed contract long before the vessel was certified. Id. at 351. As noted in the motion for reconsideration, the Court's holding that there was "insubstantial direct contact with Amkor . . ." (August 22nd Order, p 8) was incorrect. There is no evidence to support that finding and plaintiff does not even dispute it.

[3]  Plaintiffs had "the burden of proving, through affidavits, or competent evidence" a basis to establish personal jurisdiction. See Dayhoff Inc. v. H.J. Heinz Co., 86 F.3d 1287, 1302 (3d Cir.1996), cert. denied, 519 U.S. 1028, 117 S.Ct. 583, 136 L.Ed.2d 513 (1996).

[4]  Complete copies of the depositions of Dominque Castel, Herve Karabadajakian, and Sylvie Lallement were annexed as Exhibits A, B, and C (respectively) to the Supplemental Memorandum of Law submitted by ABS and AGF, dated August 1, 2003.

101545.1

    (d)    AME was free to change the layout of the chips and could even make adaptations as necessary without consulting ABS. Castel Tr., p. 35-36.

AMKOR was simply one of the many suppliers that AME used to secure the chips at issue (all of whom were unknown to ABS) and AME was one of two suppliers that ABS purchased the BBGX chips from (ST Micro being the other). The Court incorrectly accepted the plaintiff's phantom "direct benefits". Plaintiff has not established anything more than the fact that ABS designed a chip that was produced by several companies including the plaintiff and that ABS subsequently tested the chips when they were received. Plaintiff's argument that ABS precluded its suppliers from changing the specifications of the product is clearly a red herring – the companies that ABS purchased the chips from (including AME) were actually allowed to change the design and layout of the chips as they deemed appropriate. This fact was never disputed by AMKOR. Thus, plaintiff has clearly not set forth a sufficient basis for a finding of estoppel or a "direct benefit" even under the most liberal reading of Tencara.

### 2. The Plaintiff Has Failed To Address The Court's Failure To Apply The More Stringent Direct Benefit Analysis Used Within the Third Circuit

Plaintiff's opposition papers completely ignore one of the major issues raised in defendants' motion – that the Third Circuit has utilized a higher standard in conducting the "direct benefit" analysis. Plaintiff claims that the Third Circuit's holding in E.I. DuPont de Nemours and Co. v. Rhone Poulenc Fiber and Resin Intermediates, S.A.S., 269 F.3d 187, 200 (3rd Cir. 2001) confirms that the Third Circuit has adopted the Second Circuit's analysis as set forth in Tencara, supra. On the contrary, DuPont clearly shows the difference between the two Circuits as to the level of proof required before a non-signatory is bound to an arbitration clause.

First, in the seminal DuPont case, the Court actually refused to bind the non-signatory to the arbitration clause under an estoppel theory. With facts that were clearly closer to the level of a "direct benefit" as set forth in Tencara, the Third Circuit held that the non-signatory received no direct benefit

- 4 -

101545.1

**WILSON, ELSER, MOSKOWITZ, EDELMAN & DICKER LLP**
THE CURTIS CENTER • SUITE 1130 EAST • INDEPENDENCE SQUARE WEST • PHILADELPHIA, PA 19106
PHONE: (215) 627-6900 • FAX: (215) 627-2665

from the agreement at issue, even though the agreement actually made specific reference to the non-signatory and obligated the non-signatory to perform under the terms of the agreement. Id. at 191. Moreover, the DuPont Court noted that there had to be known exploitation of the agreement containing the arbitration clause before the non-signatory would be bound. Id. at 199. Most critically, the DuPont Court held that an analysis of the claims asserted by the non-signatory (the claims that the signatory argued should be subject to arbitration) was necessary as part of its estoppel scrutiny. Id. at 200-201. Even though DuPont's claim arose "at least in part, from the underlying [Joint Venture] Agreement [containing the arbitration clause]," the Third Circuit still held that there was an insufficient basis to invoke the estoppel doctrine. Id. at 200. Thus, it is clear that the Third Circuit has imposed a much greater burden than the Second Circuit when a party seeks to bind a non-signatory to the terms of an arbitration clause. That higher burden was not met under the facts in DuPont and it certainly has not been met in the case at bar.

This higher burden is not something new to the Courts within this District. In Technetronics, Inc. v. Leybold-Graeus GmbH, 1993 WL 197028 (E.D.Pa., June 9, 1993), the District Court also looked to the nature of the claims asserted by the non-signatory as part of its analysis of whether there was a duty to arbitrate. Id. at *5. Finally, as noted in the motion for reconsideration, the Fourth Circuit has also imposed this higher burden. See International Paper Company v. Schwabedissen Maschinen & Anlagen GmbH, 206 F.3d 411, 413-14, 418 (4th Cir. 2000) (part of estoppel analysis looked to the fact that contract containing the arbitration clause "provide[d] part of the factual foundation for every claim asserted, " and that the non-signatory had commenced suit against the signatory seeking to enforce the guarantees and warranties contained exclusively in the contract which contained the arbitration clause).

101545.1

WILSON, ELSER, MOSKOWITZ, EDELMAN & DICKER LLP
THE CURTIS CENTER • SUITE 1130 EAST • INDEPENDENCE SQUARE WEST • PHILADELPHIA, PA 19106
PHONE: (215) 627-6900 • FAX: (215) 627-2665

### 3. The Court Improperly Accepted Plaintiff's Alter-Ego Arguments As True And Improperly Allowed Those Allegations To Factor Into Its Analysis

While the precise nomenclature of the doctrine is not clear, the legal standards governing the doctrine are identical whether courts call it alter-ego liability or piercing the corporate veil. Phoenix Canada Oil Co., Ltd. v. Texaco, Inc., 842 F.2d 1466, 1476 (3d Cir. 1988). That two corporate entities have a close relationship or coordinate and cooperate with each other, however, does not demonstrate alter ego status. Katz v. Princess Hotels Intern., Inc., 839 F. Supp. 406, 410-11 (E.D. La. 1993); Hopper v. Ford Motor Company Ltd., 837 F. Supp. 840, 844 (S.D. Tex. 1993). As the plaintiff failed to making any showing to support its claims of alter-ego liability between AME and ABS, the Court should not have allowed the subsidiary relationship between AME And ABS to factor into its analysis. The Court improperly considered the plaintiffs' unsubstantiated allegations of alter-ego liability when conducting its estoppel analysis. As the plaintiff failed to meet the threshold of proving ABS and AME were alter egos, the Court's consideration of these factors improperly impacted the estoppel analysis.

### POINT II

### THE COURT SHOULD HAVE DISMISSED THE CASE ON INTERNATIONAL COMITY GROUNDS

Plaintiff's opposition papers suggest that this case should be allowed to proceed simultaneously with the French litigation, despite the strong possibilities of divergent outcomes. Moreover, plaintiff later suggests that the defendants should simply stipulate to the entry of a final judgment in this case and allow its demand to arbitrate to proceed. This position ignores the enormous waste of judicial resources that will result by allowing the cases to proceed simultaneously. To the extent that plaintiff indicates that the French litigation is similar, there are clearly differences that will result in even further divergent results.

101545.1

**WILSON, ELSER, MOSKOWITZ, EDELMAN & DICKER LLP**
THE CURTIS CENTER • SUITE 1130 EAST • INDEPENDENCE SQUARE WEST • PHILADELPHIA, PA 19106
PHONE: (215) 627-6900 • FAX: (215) 627-2665

First, plaintiff fails to acknowledge that the parties involved in the French litigation are different from those in this matter (and, thus, will not be bound by the results of any arbitration in the United States). As set forth in the Joint Submissions to the Court, the plaintiff in this action, Amkor Technology Inc., is only one of four defendants in the French litigation, those defendants also including Amkor Technology Euroservices (a French corporation), Amkor Wafer Fabrication Services (a French corporation), and Anam Semiconductor Inc (a Korean corporation). See Joint Submission, A1/A2. Thus, three out of the four defendants will not be impacted by the arbitration plaintiff seeks to invoke. This Court should allow the all-encompassing French litigation to proceed without the needless expense and piecemeal results that will result from forcing ABS and AGF to arbitrate their claims against only one of four defendants from the French litigation.

## POINT III

### PLAINTIFF HAS FAILED TO PROVIDE ANY BASIS TO DENY THE DEFENDANTS' ALTERNATIVE RELIEF OF CERTIFICATION OF THE ORDER FOR INTERLOCUTORY APPEAL

Plaintiff concedes that a "controlling issue of law" exists in the case at bar, but contends that defendants' arguments pertain to the application of law to the facts rather than questions of law and, thus, are not worthy of interim appellate review. Plaintiff further contends that there is no difference of opinion in any of the holdings throughout the country related to the application of the estoppel doctrine to bind non-signatories to the terms of an arbitration clause.

As detailed in the defendants' motion for consideration, the following controlling issues of law (not facts) should be examined by the appellate court: (a) whether this Court overextended the "direct benefit" requirement for binding a non-signatory to the terms of an arbitration clause; (b) whether the Third Circuit also requires a finding that the claims asserted by the non-signatory arise out of the contract containing the arbitration clause as the final component of the estoppel analysis; and (c)

- 7 -

101545.1

**WILSON, ELSER, MOSKOWITZ, EDELMAN & DICKER LLP**
THE CURTIS CENTER • SUITE 1130 EAST • INDEPENDENCE SQUARE WEST • PHILADELPHIA, PA 19106
PHONE: (215) 627-6900 • FAX: (215) 627-2665

whether this Court improperly shifted the burden of proof to the defendants to disprove the plaintiff's allegations of alter-ego liability and whether the Court properly considered those allegations in conducting its estoppel analysis.

Finally, plaintiff admits that reversal of this Court's decision would result in the ultimate resolution of the case but contends that the delay in waiting for a decision on the appeal warrants denial of the defendant's request. The one case cited by the plaintiff on the issue of ultimate resolution, Maye v. Smith Barney Inc., simply held that "plaintiffs cannot obtain appellate review of an issue concerning the merits of plaintiffs' underlying case that was not addressed in the order for which leave to appeal is sought." 903 F.Supp. 570, 574-75 (S.D.N.Y. 1995). In fact, the Maye case actually noted that:

> Section 16(b) of the FAA, however, preserves the appealability of interlocutory orders as provided in 28 U.S.C. § 1292(b) . . . Despite the preference for arbitration over litigation manifested in the FAA generally, and § 16 in particular, 28 U.S.C. § 1292(b) is routinely invoked to permit interlocutory appellate review of orders in favor of arbitration where such review would have been otherwise barred by the provisions of 9 U.S.C. § 16.

903 F.Supp. at 573 (internal citations omitted). Plaintiff's slippery-slope argument -- that the Courts would have to grant interlocutory appeals on all motions to dismiss a petition seeking to compel arbitration -- is simply unfounded. Such an argument, clearly fails to address the provisions of Section 16(b) of the FAA as well as the two other factors required for an interim appeal, as set forth in 28 U.S.C. 1292 (other than the ultimate resolution criteria). Contrary to plaintiff's belief there is no danger of automatic rights to an interlocutory appeal. Thus, plaintiff has failed to provide any basis to defeat defendants' assertion that a successful interlocutory appeal would, in fact, lead to the ultimate resolution of the case.

101545.1

WILSON, ELSER, MOSKOWITZ, EDELMAN & DICKER LLP
THE CURTIS CENTER • SUITE 1130 EAST • INDEPENDENCE SQUARE WEST • PHILADELPHIA, PA 19106
PHONE: (215) 627-6900 • FAX: (215) 627-2665

## CONCLUSION

WHEREFORE, it is respectfully requested that this Court grant the defendants reconsideration of the August 22, 2003 Order and upon reconsideration grant the defendants' motion seeking the dismissal of the Petition filed by AMKOR TECHNOLOGY, INC., a Delaware Corporation (hereinafter "AMKOR") pursuant to Fed. R. Civ. P. 12(b)(2) for lack of personal jurisdiction and Fed. R. Civ. P. 12(b)(6) for failure to state a claim upon which relief can be granted. In the alternative, it is respectfully requested that the Court certify the August 22, 2003 Order for interlocutory review by the United States Court of Appeals for the Third Circuit and enter an Order staying all proceedings in this matter pending a determination on the appeal.

Dated: October 6, 2003

Respectfully submitted,

WILSON, ELSER, MOSKOWITZ, EDELMAN & DICKER LLP

By: _____
Louis J. Isaacsohn, Esquire
Wendy D. Testa, Esquire
Attorneys for Defendants
ALCATEL BUSINESS SYSTEMS and
ASSURANCES GENERALES DE FRANCE IART
Independence Square West
The Curtis Center, Suite 1130 East
Philadelphia, PA 19106-3308
(215) 627-6900

Of Counsel:

Thomas A. Leghorn
Brett A. Scher

101545.1

## CERTIFICATE OF SERVICE

Louis J. Isaacsohn, Esquire and Wendy D. Testa, attorneys for Defendants, Alcatel Business Systems and Assurances Generales De France Iart certifies that on October __, 2003 they sent by United States mail, first class, postage prepaid, a true and correct copy of Reply Memorandum Of Law In Support Of Defendants' Alcatel Business Systems And Assurances Generales De France Iart Motion For Reconsideration Or, In The Alternative, To Certify An Order For Interlocutory Appeal Pursuant To 28 U.S.C. §1292(B) And Interim Stay to:

Patrick J. Loftus, Esquire
Duane Morris LLP
1650 Market Street, 39th Floor
Philadelphia, PA 19103

Louis J. Isaacsohn, Esquire and
Wendy D. Testa, Esquire

Dated: October 6, 2003

101529.1

**WILSON, ELSER, MOSKOWITZ, EDELMAN & DICKER LLP**
THE CURTIS CENTER • SUITE 1130 EAST • INDEPENDENCE SQUARE WEST • PHILADELPHIA, PA 19106
PHONE: (215) 627-6900 • FAX: (215) 627-2665