IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF PENNSYLVANIA

AMKOR TECHNOLOGY, INC., a Delaware )
Corporation, )
                                    )          CIVIL ACTION NO.: 02-3156
            Plaintiff/Petitioner,   )
                                    )
     v.                             )
                                    )
ALCATEL BUSINESS SYSTEMS, a French  )
Corporation, ASSURANCES GENERALES DE )
FRANCE IART, a French Corporation, and )
ALCATEL MICROELECTRONICS N.V., a    )
Belgian corporation                 )
                                    )
            Defendants/Respondents. )
                                    )

## NOTICE OF JUDGMENT OF COMMERCIAL COURT OF PARIS

Notice is hereby given that the Commercial Court of Paris, Eighth Chamber, entered a

judgment on Wednesday, May 19, 2004 in the matter between Alcatel Business Systems and

Assurances Generales De France Iart on the one hand and Amkor Technology, Amkor

Technology Euriservices, Amkor Wafer Fabrication Services, and Anam Semiconductor Inc., on

the other hand in which the Court declared itself incompetent with respect to jurisdiction in light

of the contractual relationship among the parties.

Attached as Exhibit A hereto is a true and correct copy of the judgment of the

Commercial Court of Paris as issued by the Court in the French language.

Attached as Exhibit B hereto is a true and correct copy of translation of the judgment of

the Commercial Court of Paris into the English language by Transperfect Translations of San

Francisco, California, accompanied by a copy of the Declaration of Kristin Davidson, the

translator.

Dated: July 12, 2004_____      DUANE MORRIS LLP

              By: _Patrick Loftus /PS by permission_

              Patrick Loftus
              PA. ID. 60417

              One Liberty Place
              Philadelphia, PA 19103-7396
              Telephone:  (215) 979-1000
              Facsimile:   (215) 979-1020

Of Counsel:

David S. Steuer (CA State Bar #127059) (admitted *pro hac vice*)
Ignacio E. Salceda (CA State Bar #164017) (admitted *pro hac vice*)

WILSON SONSINI GOODRICH & ROSATI
Professional Corporation
650 Page Mill Road
Palo Alto, CA 94304-1050
Telephone:  (650) 493-9300
Facsimile:   (650) 565-5100

# EXHIBIT A

CRG - PAGE **1**

B9
SCP BRODU CICUREL
MEYNARD Avocats
Me Alain OLTRAMARE Avocat
Me LYONNET Avocat

# TRIBUNAL DE COMMERCE DE PARIS

## JUGEMENT PRONONCE LE MERCREDI 19 MAI 2004

### HUITIEME CHAMBRE

19/06/2002
RG 2002024616-1

**ENTRE** :   1°) SOCIETE ALCATEL BUSINESS SYSTEMS – société anonyme – RCS de PARIS B 602 033 185 – siège social 12 rue de la Baume 75008 PARIS –
        2°) SOCIETE ASSURANCES GENERALES DE FRANCE IART – société anonyme – RCS de PARIS B 542 110 291 – domiciliée 87 rue de Richelieu 75002 PARIS, prise en sa qualité d'assureur de la société ALCATEL BUSINESS SYSTEMS –
PARTIES DEMANDERESSES assistées de Maître METTETAL Avocat plaidant et comparant par la SCP BRODU CICUREL MEYNARD Avocats, P240 –

**ET** : 1°) SOCIETE AMKOR TECHNOLOGY – société de droit américain – domiciliée Goshen Corporate Park, West Chester, PA 1345 Enterprise Drive, 19380 USA (Pennsylvanie), assignée par copie remise au Parquet–
        2°) SOCIETE AMKOR TECHNOLOGY EURISERVICES – société à responsabilité limitée – RCS de BOURG B 393.361.332 – domiciliée 13 Chemin du Levant 01210 FERNEY VOLTAIRE –
        3°) SOCIETE AMKOR WAFER FABRICATION SERVICES – société à responsabilité limitée – RCS de LYON B 415.293.729 – domiciliée 33 rue du Docteur Levy 69200 VENISSIEUX –
PARTIES DEFENDERESSES assistées de Maître SERRE Avocat plaidant et comparant par Maître Alain OLTRAMARE Avocat (AO) –
        4°) SOCIETE ANAM SEMICONDUCTOR INC – société de droit coréen – siège social 222 – 1 Dodang – Dong, Wonmi-gu, Bucheon, Gyeonnggi-do, 420-712 COREE DU SUD, assignée par copie remise au Parquet –
PARTIE DEFENDERESSE assistée de Maître LESCOP DE MOY Avocat plaidant et comparant par la SCP LYONNET & BIGOT Avocats (L) –

### APRES EN AVOIR DELIBERE

### LES FAITS

La société ALCATEL BUSINESS SYSTEMS (ABS) fabrique et commercialise des téléphones mobiles, à partir de composants électroniques dénommés « BBGX », produits par la société coréenne ANAM SEMICONDUCTOR INC. (ANAM) et vendus par celle-ci

EDITION : 25 mai 2004-15:05:55

*Tribunal de Commerce de Paris*
*Jugement du 19/05/2004*
*Huitième Chambre*

N° RG : 2002024616

CRG - PAGE 2

à la société américaine AMKOR TECHNOLOGY (AMKOR), laquelle les a revendus à la société belge ALCATEL MICROELECTRONICS (AME) qui elle-même les a insérés dans des pièces fournies à la société ABS et entrant dans la fabrication des téléphones mobiles.

Des dysfonctionnements sont apparus sur les téléphones fabriqués avec les composants « BBGX » fournis par la société ANAM, l'origine des pannes constatés semblant provenir d'une sensibilité particulière du micro-composant à l'humidité.

La société ANAM et la société AMKOR ont refusé de reconnaître leur responsabilité dans le dommage subi par la société ABS du fait des téléphones défectueux, et évalué par celle-ci à la somme totale de 50.308.176,95 €. Les AGF, assureurs de la société ABS, ont réglé au titre de ce sinistre la somme de 16.251.065 €, laissant à la charge de la société ABS le solde soit 34.057.111,95 €.

C'est dans ces conditions que la société ABS et les AGF ont décidé d'engager la présente action à l'encontre de la société AMKOR, de ses deux filiales françaises (AMKOR TECHNOLOGY EUROSERVICES et AMKOR WAFER FABRICATION SERVICES), et de la société ANAM.

**LA PROCEDURE**

Par actes d'assignation des 21 et 27/03/02 signifiés à Parquet, la société ABS et les AGF demandent au tribunal de condamner solidairement les défenderesses à payer à la société ABS la somme de 34.057.111,95 € avec intérêts au taux légal à compter de l'assignation, et aux AGF la somme de 16.251.065 € avec intérêts au taux légal à compter des règlements effectués à l'assuré, ainsi que la somme de 100.000 € au titre de l'article 700 du NCPC, et les dépens.

Par conclusions du 19/06/02, les défenderesses ont soulevé l'exception d'incompétence de ce Tribunal, ce à quoi se sont opposées les demanderesses par conclusions du 23/10/02.

Par conclusions régularisées à l'audience du Juge Rapporteur du 13/11/02, les défenderesses ont demandé au tribunal de donner injonction aux demanderesses de leur communiquer certains documents.

Par jugement du 20/11/02, le Tribunal a renvoyé l'affaire au 23/04/03 dans l'attente de l'arrêt de la Cour d'Appel devant statuer sur l'appel formé par les défenderesses à propos de

Tribunal de Commerce de Paris
Jugement du 19/05/2004
Huitième Chambre

N° RG : 2002024616

CRG - PAGE 3

l'ordonnance de référé du 12/04/02 rendu par le Président de
ce Tribunal ayant nommé un expert judiciaire en la personne de
M. DENIS LAROQUE.

Les parties ont déposé chacune des conclusions le 23/04/03
réitérant leurs premières écritures.

Par conclusions d'incompétence du 22/10/03, la société ANAM
demande au Tribunal de se déclarer incompétent au profit du
Tribunal Arbitral de l'American Arbitration Association de
Philadelphie, à défaut du Tribunal de Commerce de Séoul, et de
condamner les demanderesses à lui payer 5.000 € au titre de
l'article 700 du NCPC.

Par conclusions du 25/02/04, la société AMKOR et ses deux
filiales françaises demandent au Tribunal de se déclarer
incompétent au profit du Tribunal Arbitral de l'American
Arbitration Association de Philadelphie, à défaut, de la
United States District Court for the Eastern District of
Pennsylvania (USA), à défaut, du Tribunal de Commerce de
Séoul, à défaut, du Tribunal de Commerce de Bourg en Bresse
pour ce qui concerne la société AMKOR EUROSERVICES ou du
Tribunal de Commerce de Lyon pour ce qui concerne la société
AMKOR WAFER FABRICATION SERVICES, à défaut, faire droit à
l'exception de connexité, enfin condamner les demanderesses à
payer à chacune d'entre elles par provision 5.000 € au titre
de l'article 700 du NCPC.

Par conclusions récapitulatives n°2 du même jour, la société
ABS et les AGF demandent au Tribunal de se déclarer compétent,
et :
  –    Principalement de condamner in solidum les
       défenderesses à payer aux AGF 16.251.065 € et à la
       société ABS 34.057.111,95 €, avec intérêts au taux
       légal à compter de l'assignation, et ordonner la
       capitalisation des intérêts,
  –    Subsidiairement surseoir à statuer jusqu'au dépôt du
       rapport d'expertise judiciaire.
  –    Dans tous les cas condamner in solidum la société AMKOR
       et la société ANAM à leur payer 50.000 € au titre de
       l'article 700 du NCPC.

Après avoir entendu les conseils des parties en leur
plaidoirie respective sur les exceptions soulevées, lors de
son audience de plaidoirie du 28/04/04, le Tribunal a
ordonné la clôture des débats pour jugement sur les dites
exceptions être prononcé le 19/04/04.

EDITION : 25 mai 2004-15:05:55

## LES MOYENS DES PARTIES

A l'appui de l'exception d'incompétence soulevée, **la société AMKOR** expose que la société ABS n'a pas attrait sa société parente AME dans la cause, afin de faire passer son action contre elle en action en responsabilité délictuelle. Pourtant son action est de nature contractuelle et non de nature délictuelle. En effet, selon la société AMKOR, il ressort des auditions de la société ABS tant dans le cadre de la procédure américaine que dans celui de l'expertise judiciaire que les relations entre la société ABS et la société AME ont été si imbriquées qu'elles constituent une chaîne contractuelle indivisible dont l'initiateur et le bénéficiaire final sont ABS. Celle-ci est sous-acquéreur des produits fabriqués par la société ANAM et dont la propriété a été transférée à la société ABS dans le cadre d'une série de ventes qui constituent une chaîne de contrats translatifs de propriété. D'ailleurs la société ABS ne nie pas sa qualité de sous-acquéreur puisque subsidiairement elle invoque le vice caché dans le cadre de la vente du composant litigieux. Or selon une jurisprudence constante, l'action du sous-acquéreur dans une chaîne de contrats translatifs de propriété est une action contractuelle.

La société AMKOR fait valoir que ce sont donc les critères de compétence de la responsabilité contractuelle qui doivent s'appliquer, et que la qualification d'action contractuelle emporte opposabilité de la clause compromissoire de l'article 16 du contrat passé entre la société AMKOR et la société AME, selon la jurisprudence de l'arrêt « PEAVEY » de la Cour de Cassation du 6/02/01. D'autres arrêts ont reconnu l'opposabilité de la clause d'arbitrage en raison de l'existence d'une opération économique impliquant plusieurs entités du même groupe. Les Tribunaux ne tolèrent pas en effet que des sociétés d'un même groupe essaient d'échapper à leurs obligations contractuelles en engageant des procédures artificielles sur un fondement délictuel par le moyen d'une interposition d'autres sociétés leur permettant de passer pour des tiers ignorants.

Enfin la société AMKOR soutient qu'il s'agit bien en l'occurrence d'une chaîne « homogène » de contrats puisque c'est le même composant qui est descendu de la société ANAM vers la société ABS, c'est-à-dire tout le long de la chaîne, et que la société ABS ne pouvait ignorer l'existence de la clause d'arbitrage entre la société AMKOR et la société AME ;

que par conséquent les conditions posées par l'arrêt
« PEAVEY » sont bien réunies.

De son côté **la société ANAM** reprend les moyens développés par
la société AMKOR, y ajoutant d'autres jurisprudences sur
l'opposabilité des clauses d'arbitrage dans le cas d'une
chaîne de contrats, et faisant savoir qu'elle a renoncé à la
clause d'arbitrage figurant dans son propre contrat avec la
société AMKOR, au bénéfice de l'arbitrage tel qu'il est prévu
par l'article 16 du contrat passé entre la société AMKOR et la
société AME, et ce, afin que l'ensemble du litige portant sur
le composant BBGX soit examiné par le même arbitre.

En réplique, **la société ABS et les AGF** font valoir d'abord que
leur action se fonde sur les articles 1382 et 1383 du Code
Civil sur la responsabilité délictuelle. Selon plusieurs
décisions de justice, en l'absence de contrat direct de vente
entre un sous-acquéreur français et un vendeur étranger,
l'action ne peut reposer sur un fondement contractuel ; sauf à
faire fi de la notion d'effet relatif des contrats. La
jurisprudence de la CJCE va d'ailleurs dans ce sens.

La société ABS et les AGF exposent ensuite que si leur action
devait être jugée comme fondée sur la responsabilité
contractuelle, elles invoqueraient à titre subsidiaire le vice
caché et la non-conformité du produit.

S'agissant des exceptions d'incompétence soulevées, la société
ABS et les AGF font valoir qu'en toute hypothèse, la
compétence des juridictions françaises s'imposerait sur le
fondement des articles 14 et 15 du Code Civil. Celui-ci
instaure au profit du plaideur français un privilège de
juridiction ayant pour seul fondement la nationalité du
demandeur. L'article 14 a une portée générale s'étendant à
toutes les actions délictuelles ou contractuelles.

La société ABS et les AGF soutiennent ensuite que si leur
action est bien reconnue comme reposant sur un fondement
quasi-délictuel, la compétence des juridictions françaises
s'impose, le lieu du dommage se situant en France. S'il devait
être considéré que leur action est de nature contractuelle, la
société ABS et les AGF rappellent d'abord que la société ABS
n'avait de clause d'arbitrage ni avec la société AME, ni avec
les filiales de la société AMKOR qui sont intervenues dans le
processus d'homologation des puces, et que la société ABS est
un tiers par rapport à la clause d'arbitrage contenue dans le
contrat entre la société AMKOR et la société AME. La société
ABS n'est donc pas liée par cette obligation en vertu du

principe de l'effet relatif des conventions. C'est en application de ce principe que les conventions internationales sur l'arbitrage limitent expressément l'effet contraignant d'une clause d'arbitrage aux parties à la convention contenant cette clause.

La société ABS et les AGF font valoir ensuite que dans une chaîne de contrats, la convention d'arbitrage ne circule que si le cessionnaire a au moins implicitement accepté d'être lié par cette convention, ce qui n'a pas été le cas de la société ABS. Quant à l'arrêt « PEAVEY » critiqué d'ailleurs sur le plan des principes, il n'est pas applicable en l'espèce car la chaîne des contrats n'est pas homogène dans la mesure où ces contrats successifs ne concernent pas les mêmes éléments (le contrat AMKOR-AME vise des « puces » - le contrat AME-ABS concerne un « système assemblé »), et que ce n'est pas à la société ABS d'apporter la preuve négative de son ignorance de la clause d'arbitrage entre la société AMKOR et la société AME.

Enfin la société ABS et les AGF rappellent que selon l'article 46 du NCPC, le demandeur peut choisir d'exercer son action devant la juridiction du lieu de livraison effective de la chose, et qu'en la circonstance la société ABS a été livrée en France.


**SUR CE**

**Sur la recevabilité**

Attendu que l'exception d'incompétence a été soulevée avant toute défense au fond, qu'elle est motivée et qu'elle désigne l'American Arbitration Association(AAA) de Philadelphie comme devant être compétente ; qu'elle sera donc jugée recevable.

**Sur le mérite**

Attendu que la société AMKOR et la société AME sont liées par un contrat daté du 5/11/99 (« Manufacturing services agreement ») ; que la société AMKOR et la société ANAM ont signé un contrat le 1/11/97 (« Foundry agreement ») ;
Que la société ABS a déclaré ne pas avoir établi de contrat formel avec la société AME au motif que les deux sociétés faisaient partie du même groupe à l'époque des faits litigieux; mais qu'il n'est pas contestable ni contesté qu'elles ont eu entre elles des relations contractuelles puisqu'elles ont collaboré ensemble à la mise au point d'un

composant électronique qui a été assemblé par la société AME, et livré et facturé par celle-ci à la société ABS ;

Attendu que le produit objet du litige est un composant électronique dit BBGX fabriqué par la société ANAM en Corée du Sud, et vendu par celle-ci à la société AMKOR qui l'a revendu à la société AME; qu'il a été livré directement par la société ANAM à la société AME en Belgique ; que la société AME n'a fait « qu'encapsuler » ce composant avant de le livrer à la société ABS, laquelle l'a intégré dans ses téléphones mobiles ; qu'il peut donc être affirmé que c'est le même produit qui a circulé de la société ANAM son fabricant d'origine jusqu'à la société ABS son destinataire final, comme le démontre d'ailleurs l'expertise judiciaire puisque celle-ci a pu être effectuée sur le composant seul comme élément dissociable ;

Attendu que le rapport de l'expert judiciaire établit que « la société ABS n'a pas été seulement le client de la société AME » mais que « la société ABS et la société AME ont coopéré de façon itérative à la mise au point du circuit » ; que cette implication de la société ABS dans tout le processus industriel ayant conduit à l'élaboration et à la fabrication du composant litigieux apparaît clairement tout au long du rapport de l'expert, notamment au vu des « flow charts » contenus dans ce rapport ;

Attendu qu'il en découle que les sociétés ANAM, AMKOR, AME et ABS ont eu entre elles des relations contractuelles très imbriquées avec pour seul objectif la mise au point et la réalisation du composant BBGX ; ce qui caractérise clairement une chaîne homogène de contrats translatifs de propriété ;

Attendu d'ailleurs qu'en n'ayant pas mis en cause la société AME, son fournisseur direct, qui ne fait plus partie de son groupe, comme cela aurait été naturel, la société ABS reconnaît implicitement, par là même, que la mise en œuvre d'une telle action en responsabilité contractuelle contre la société AME aurait entraîné une série d'actions mettant en jeu la responsabilité contractuelle de toutes les parties ayant participé à la fabrication du composant litigieux, et enlevé ainsi à la société ABS toute possibilité de se placer sur le terrain de la responsabilité délictuelle ;

Attendu ensuite que la société AMKOR et la société AME sont liées par une clause d'arbitrage (Article 16 de leur contrat : AAA de Philadelphie), la société AMKOR et la société ANAM par une autre clause d'arbitrage (Article 16 de leur contrat : AAA

de Santa-Clara - Californie) ; que la société ANAM a renoncé au bénéfice de cette clause et accepté l'arbitrage de l'AAA de Philadelphie ; qu'une action est en cours devant les tribunaux de Philadelphie pour imposer à toutes les parties l'arbitrage de l'AAA de Philadelphie ;

Attendu que la société ABS est liée, comme exposé ci-dessus par des relations contractuelles non seulement avec la société AME mais aussi avec les sociétés ANAM et AMKOR ; qu'elle n'a cependant pas été signataire du contrat du 5/11/99 comportant la clause d'arbitrage ; qu'il s'agit donc de déterminer si cette clause lui est applicable ;

Attendu que l'arrêt « PEAVEY » de la Cour de Cassation du 6/02/01 énonce que « dans une chaîne homogène de contrats translatifs de marchandises, la clause d'arbitrage international se transmet avec l'action contractuelle, sauf preuve de l'ignorance raisonnable de cette clause » ; qu'il a déjà été établi qu'au cas d'espèce, les contrats entre les parties constituaient une chaîne homogène ;

Attendu ensuite qu'il n'est pas concevable que la société ABS qui connaissait la relation contractuelle de sa société sœur belge AME avec la société américaine AMKOR ait pu ignorer que le contrat les liant contenait une clause d'arbitrage ; qu'il est tout à fait courant que les contrats internationaux signés par les grands groupes tels que ALCATEL, contiennent de telles clauses, et ce d'autant plus si des sociétés américaines sont concernées ; que dans ce sens la Cour d'appel de Lyon dans son arrêt du 4/11/02 a considéré « qu'une société qui connaissait la nationalité et les habitudes contractuelles de son contractant et eu égard à sa qualité de professionnel ne peut justifier avoir eu des raisons d'ignorer la clause compromissoire insérée dans le contrat initial » ;

Attendu d'ailleurs qu'il faut noter que dans son arrêt du 28/02/03 sur l'appel formé par la société AMKOR contre l'ordonnance de désignation de l'expert judiciaire, la Cour d'appel a indiqué que « l'existence d'une clause d'arbitrage – dont la société ABS ne conteste pas avoir eu connaissance – ne fait pas obstacle à une demande d'expertise… » ;

Attendu enfin que la société ABS n'a pas apporté d'élément permettant de douter de sa connaissance de la clause d'arbitrage, sa déclaration selon laquelle dans un grand groupe chaque filiale opère indépendamment l'une de l'autre ne pouvant suffire au cas d'espèce à servir de preuve de l'ignorance raisonnable par la société ABS de cette clause ;

Tribunal de Commerce de Paris
Jugement du 19/05/2004
Huitième Chambre

N° RG : 2002024616

CRG - PAGE 9

Attendu par conséquent que le Tribunal considère que la clause d'arbitrage contenue dans le contrat passé entre les sociétés AMKOR et AME est opposable à la société ABS, que de ce fait l'article 14 du Code Civil ne peut trouver à s'appliquer, une clause d'arbitrage valant renonciation à se prévaloir du privilège de juridiction ;

Attendu que, la clause d'arbitrage devant trouver à s'appliquer, les autres moyens produits par les parties seront jugés inopérants ;

Attendu par conséquent que le Tribunal dira l'exception d'incompétence soulevée par les défenderesses recevable et bien fondée, se déclarera incompétent et renverra les parties à mieux se pourvoir ;

Attendu, s'agissant des demandes faites au titre de l'article 700 du NCPC, qu'il apparaît équitable, compte tenu de l'état d'avancement du litige, de laisser à chaque partie la charge de ses frais irrépétibles ;

Attendu que les dépens seront mis à la charge in solidum de la société ABS et des AGF.


**PAR CES MOTIFS**

Le Tribunal statuant par jugement contradictoire en premier ressort :

- Dit l'exception d'incompétence soulevée par les défenderesses recevable et bien fondée.

- Se déclare incompétent.

- Renvoie les parties à mieux se pourvoir.

- Déboute les parties de toutes leurs demandes plus amples ou contraires sur l'exception soulevée.

- Condamne in solidum la société ALCATEL BUSINESS SYSTEMS et la société ASSURANCES GENERALES DE FRANCE IART aux dépens, dont ceux à recouvrer par le Greffe liquidés à la somme de 108,52 € TTC (dont 17,47 € de TVA).

Retenu et plaidé à l'audience publique où siégeaient Messieurs MICHOUDET, LAUBIE et Madame LEPROVOST.

Tribunal de Commerce de Paris
Jugement du 19/05/2004
Huitième Chambre

N° RG : 2002024616

CRG - PAGE 10

DELIBERE par les mêmes magistrats et prononcé à l'audience
publique où siégeaient :

       Monsieur MICHOUDET, Juge présidant l'audience, Messieurs
LAUBIE et BURIN des ROZIERS, Juges, assistés de Madame LELIEVRE,
Greffier. Les parties en ayant été préalablement avisées.
       La minute du jugement est signée par le Président du
délibéré et le Greffier.

Tribunal de Commerce de Paris
Jugement du 19/05/2004
Huitième Chambre

N° RG : 2002024616

CRG - PAGE 11

*Pour EXPEDITION certifiée conforme,
délivrée sans formule exécutoire.*



**EXHIBIT B**

B9
SCP BRODU CICUREL
MEYNARD Attorneys
Mr. Alain OLTRAMARE, Esq.
Mr. LYONNET, Esq.

CRG-PAGE 1

## COMMERCIAL COURT OF PARIS

## JUDGMENT PASSED ON WEDNESDAY, MAY 19, 2004

## EIGHTH CHAMBER

06/19/2002
RG 2002024616-1

**BETWEEN**:    1°) ALCATEL BUSINESS SYSTEMS – public limited company – Register of Trade and Commerce of PARIS B 602 033 185 – headquartered at 12 rue de la Baume 75008 PARIS –

2°) ASSURANCES GENERALES DE FRANCE IART – public limited company – Register of Trade and Commerce of PARIS B 542 110 291 – domiciled at 87 rue de Richelieu 75002 PARIS, taken in its capacity as insurance agent of ALCATEL BUSINESS SYSTEMS –
CLAIMANTS assisted by Atty. METTETAL with binding authority to litigate and represented by SCP BRODU CICUREL MEYNARD Attorneys, P240 –

**AND**:        1°) AMKOR TECHNOLOGY – company governed by American law  –
domiciled at Goshen Corporate Park, West Chester, PA 1345 Enterprise Drive, 19380 USA (Pennsylvania), assigned by copy    submitted to the Public Prosecutor's Office –
2°) AMKOR TECHNOLOGY EURISERVICES [sic] – limited liability company – Register of Trade and Commerce of BOURG B 393 361 332 – domiciled at 13 Chemin du Levant 01210 FERNEY VOLTAIRE –
3°) AMKOR WAFER FABRICATION SERVICES – limited  liability company – Register of Trade and Commerce of LYON B 415  293 729 – domiciled at 33 rue du Docteur Levy 69200 VENISSIEUX –
DEFENDANTS assisted by Atty. SERRE with binding authority to litigate and represented by Atty. Alain OLTRAMARE (AO) –
4°) ANAM SEMICONDUCTOR INC – company governed by Korean law – headquartered at 222 – 1 Dodang – Dong, Wonmi-gu, Bucheon, Gyeonnggi-do, 420-712 SOUTH KOREA, assigned by copy submitted to the Public Prosecutor's Office –
DEFENDANTS assisted by Mr. LESCOP DE MOY Solicitor with binding authority to litigate and represented by SCP LYONNET & BIGOT Attorneys (L) –

### AFTER HAVING DELIBERATED

## THE FACTS

ALCATEL BUSINESS SYSTEMS (ABS) manufactures and markets mobile telephones, apart from electronic parts called "BBGX," manufactured by the Korean company ANAM SEMICONDUCTOR INC. (ANAM) and sold by the latter

[all pages are initialed]

EDITION: May 25, 2004 – 3:05:55 PM

Commercial Court of Paris                                            No. RG: 2002024616
Judgment of 05/19/2004
Eighth Chamber                                                      CRG – PAGE 2

to the American company AMKOR TECHNOLOGY (AMKOR), which in turn sells them to the Belgian company ALCATEL MICROELECTRONICS (AME), which inserted them in the parts supplied to ABS and which, thus went into the manufacture of mobile phones.
Malfunctions have been encountered on the telephones manufactured with the "BBGX" parts supplied by ANAM and the origin of the defects observed seem to on account of the particular sensitivity of the micro-component to humidity.

ANAM and AMKOR refused to recognize their responsibility in the damage suffered by ABS on account of the defective telephones, with the damages evaluated to a total sum of € 50,308,176.95. The AGF, insurance agents of ABS, settled the sum of € 16,251,065 toward this claim, leaving the balance of € 34,057,111.95 for ABS to pay.

It is under these conditions that ABS and AGF decided to file this case against AMKOR, its two French subsidiaries (AMKOR TECHNOLOGY EUROSERVICES and AMKOR WAFER FABRICATION SERVICES), and ANAM.

**THE PROCEDURE**

With the summons of 03/21/02 and 03/27/02 served on the Public Prosecutor's Office, ABS and AGF solicited the court to jointly condemn the defendants to jointly pay the sum of € 34,057,111.95 to ABS with the legal interest rate from the date of the summons and the sum of € 16,251,065 to AGF with the legal interest rate from the date of the payments made to the insured, as well as the sum of € 100,000 toward article 700 of the NCPC [New Code for Civil Procedures] and expenses.

By the conclusions of 06/19/02, the defendants raised the exception of the lack of jurisdiction of this Court, and this with regard to what the claimants had opposed to with the conclusions of 10/23/02.

By the conclusions adjusted for the hearing of the Reporting Judge of 11/13/02, the defendants solicited the court to order the claimants to send certain documents to them.

By the judgment of 11/20/02, the Court sent the case on 04/23/03 awaiting the order of the Court of Appeal to give a verdict on the appeal by the defendants with regard to

EDITION: May 25, 2004 – 3:05:55 PM

Commercial Court of Paris                                    No. RG: 2002024616
Judgment of 05/19/2004
Eighth Chamber                                               CRG – PAGE 3

the order of the referral court of 04/12/02 rendered by the Presiding Judge of this Court, having appointed Mr. DENIS LEROQUE as the legal expert.

Each of the parties has filed the conclusions of 04/23/03 reiterating their first documents.

By the conclusions of lack of jurisdiction of 10/22/03, ANAM solicits the Court to declare itself as incompetent in favor of the Arbitration Court of the American Arbitration Association of Philadelphia, instead of the Commercial Court of Seoul and to condemn the claimants to pay them € 5,000 toward article 700 of the NCPC.

By the conclusions of 02/25/04, AMKOR and its two subsidiaries solicit the Court to declare itself as incompetent in favor of the Arbitration Court of the American Arbitration Association of Philadelphia, instead of the United States District Court for the Eastern District of Pennsylvania (USA), the Commercial Court of Seoul, and the Commercial Court of Bourg en Bresse in the case of AMKOR EUROSERVICES or the Commercial Court of Lyon in the case of AMKOR WAFER FABRICATION SERVICES, failing which to sustain the exception of connectivity, to finally condemn the claimants to pay to each one of them an allowance of € 5,000 toward article 700 of the NCPC.

With the conclusions recapitulated from n° 2 of the same day, ABS and AGF solicit the Court to declare itself competent and:

- Principally condemn the defendants jointly to pay the sum of € 16,251,065 to AGF and € 34,057,111.95 to ABS with the legal interest rate from the date of the summons and order the capitalization of interests,
- Subsidiarily postpone judgment until the report of the legal expert is submitted,
- In all the cases, to condemn AMKOR and ANAM to jointly pay them € 50,000 toward article 700 of the NCPC.

After having heard the respective counsel's arguments of the parties vis-à-vis the exceptions raised during its hearing of 04/28/04, the Court ordered the closing of the arguments for judgment on the said exceptions to be pronounced on 04/19/04.

Commercial Court of Paris
Judgment of 05/19/2004
Eighth Chamber

No. RG: 2002024616

CRG – PAGE 4

## THE MEANS OF THE PARTIES

Based on the exception of incompetence raised, **AMKOR** states that ABS did not appeal its parent company AME in the cause so as to have its action against the latter for violation of responsibilities. However, its action is of a contractual nature and not of that punishable by law. Indeed, according to AMKOR, the hearings of the company ABS, within the scope of the American proceedings and within that of legal expertise, prove that the relations between ABS and AME were so complex that they constitute an indivisible contractual chain, the initiator and the final beneficiary of which are ABS. The latter is the sub-acquirer of products manufactured by the company ANAM and the ownership of which had been transferred to ABS within the framework of a series of sales constituting a chain of contracts for the transfer of ownership. However, ABS does not deny its position of sub-acquirer as it subsidiarily exposes the hidden flaw in the context of sale of the disputed part. Besides, according to a constant precedence, the action of the sub-acquirer in the chain of contracts for the transfer of ownership is a contractual action.

AMKOR proves that it is therefore the criteria of competence of the contractual responsibility that should be applied and that the qualification of contractual action eliminates the opposability of the arbitration clause of article 16 of the contract signed between AMKOR and AME, as per the jurisprudence of the "PEAVEY" order of the Court of Appeal of 02/06/01. Other orders recognized the opposability of the arbitration clause on account of the existence of an economic operation involving several entities of the same group. Indeed, the Courts do not tolerate the fact of companies that the same group try to evade their contractual obligations by undertaking artificial procedures on a basis punishable by law by interposing other companies that enable them to pass off as ignorant third parties.

Lastly, AMKOR sustains the fact that in this case it concerns a "homogenous" chain of contracts as it is the same part, which has come down from ANAM to ABS, i.e. all the way down the chain, and that ABS could not ignore the existence of the arbitration clause between AMKOR and

EDITION: May 25, 2004 – 3:05:55 PM

Commercial Court of Paris
Judgment of 05/19/2004
Eighth Chamber

No. RG: 2002024616

CRG – PAGE 5

AME; and consequently the conditions put by the "PEAVEY" order are met.

From its side, **ANAM** picked up the means developed by AMKOR, by adding other jurisprudences to the opposability of the arbitration clause in case of a chain of contracts figuring in its contract with AMKOR in favor of the arbitration as has been stipulated in article 16 of the contract signed between AMKOR and AME and this, for the entire dispute on the BBGX part to be examined by the same arbitrator.

In reply, **ABS and AGF** first proved that their action is based on articles 1382 and 1382 of the Civil Code on violation of responsibility. As per several court decisions, in the absence of a direct contract of sale between a French sub-acquirer and a foreign vendor, the action can be based on a contractual foundation; except to flout the notion of the relative effect of the contracts. Besides, the jurisprudence of CJCE is in this direction.

ABS and AGF then state that if their action were to be judged as being based on contractual responsibility, they would subsidiarily expose the hidden flaw and non-conformity of the product.

As far as the exceptions of incompetence raised are concerned, ABS and AGF assert that in all likelihood, the competence of French jurisdictions would be imposed on the foundation of articles 14 and 15 of the Civil Code. This establishes a preference of jurisprudence in favor of the French litigant, based solely on the nationality of the claimant. Article 14 has a general scope extending to all the offensive or contractual actions.

The companies ABS and AGF then sustain the fact that if their action is recognized as being based on a quasi-offensive foundation, the competence of the French jurisdictions shall be imposed, with the place of damage being situated in France. If their action were to be considered to be contractual in nature, ABS and AGF firstly recall that ABS had the arbitration clause neither with AME nor with the subsidiaries of AMKOR, who carried out the process of homologation of the chips, and that ABS is a third party vis-à-vis the arbitration clause contained in the contract between AMKOR and AME. ABS is thus not bound by this obligation by virtue

EDITION: May 25, 2004 – 3:05:55 PM

Commercial Court of Paris                                    No. RG: 2002024616
Judgment of 05/19/2004
Eighth Chamber                                              CRG – PAGE 6

of principle of relative effect of the agreements. It is by applying this principle that international agreements on arbitration expressly limit the constraining effect of an arbitration clause on the parties to the agreement containing this clause.

ABF and AGF then assert that in a chain of contracts, the arbitration agreement circulates only it the transferee has, at least implicitly, accepted to be bound by this agreement, which was not the case with ABS. Besides, as for as the "PEAVEY" order criticized at the level of principles is concerned, it is not applicable in the case in point because the chain of contracts is not homogeneous in that these successive contracts do not concern the same elements (the AMKOR-AME contract mentions "chips" – the AME-ABS contract concerns an "assembled system"), and that it is not for ABS to negatively prove its ignorance of the arbitration clause between AMKOR and AME.

Lastly, ABS and AGF recall that as per article 46 of the NCPC, the claimant can choose to exercise its action before the jurisdiction of the place of effective delivery of the product and that under the circumstance, ABS delivery had been made in France.

**ON THIS**

<u>**On the Admissibility**</u>

In considering that the declinatory plea was raised prior to any in-depth defense, that it is justified and designates the American Arbitration Association (AAA), Philadelphia as being the competent body; that it will therefore be deemed to be admissible.

<u>**On the merits of the case**</u>

In considering that the two companies, AMKOR and AME are bound by a contract dated November 5, 1999 ("Manufacturing Services Agreement"); that the two companies AMKOR and ANAM have signed a contract dated November 1, 1997 ("Foundry Agreement"); that the ABS company has stated that it did not enter into a formal contract with AME for the reason that the two companies were members of the same group at the time of the litigious events; but that it is not contestable nor contested that there were contractual relationships between them since they collaborated to produce an

EDITION: May 25, 2004 – 3:05:55 PM

Commercial Court of Paris                              No. RG: 2002024616
Judgment of 05/19/2004
Eighth Chamber                                         CRG – PAGE 7

electronic component which was assembled by AME and supplied and invoiced by AME to ABS;

In considering that the product, which is the subject of litigation is an electronic component, designated BBGX, manufactured by ANAM in South Korea and sold by ANAM to AMKOR who resold it to AME; that it was supplied directly by ANAM to AME in Belgium; that AME had only to "encapsulate" this component prior to delivering it to ABS, who integrated it into its mobile telephones; that it can therefore be confirmed that it is the same product which has circulated from ANAM, its original manufacturer, through to ABS as its final destination (as legal expertise elsewhere has been able to establish) since this has been able to be carried out on the component alone as a stand-alone item;

In considering that the legal expert's report has established that "ABS has not been just the client of the AME" but that "the ABS and AME companies have cooperated in an iterative fashion to put this circular process into effect"; that this involvement by ABS in the complete industrial process, which led to the development and manufacture of the component under litigation, is very apparent throughout the expert's report, particularly when viewing the "flow charts" contained in this report;

In considering that, arising from this, is the fact that the ANAM, AMKOR, AME, and ABS companies had very overlapping contractual relationships between each other for the sole purpose of developing and manufacturing the BBGX component; that this clearly delineates a standard series of contracts for the transference of ownership;

Moreover, in considering that, by not putting the blame on AME, its direct supplier, who is no longer party to this group, as would have been quite normal, in the same way ABS implicitly recognizes, by this action, that the taking of such an action as a contractual responsibility against AME would have resulted in a series of actions bringing into play the contractual responsibility of all the parties who participated in the manufacture of the component under litigation, and thus relieved ABS of any possibility of being placed in a position of responsibility constituting a tort;

In considering that, as a consequence AMKOR and AME are bound by an arbitration clause (Article 16 of their contract: AAA, Philadelphia), AMKOR and ANAM by another arbitration clause (Article 16 of their contract: AAA,

EDITION: May 25, 2004 – 3:05:55 PM

Commercial Court of Paris                    No. RG: 2002024616
Judgment of 05/19/2004
Eighth Chamber                               CRG – PAGE 8

Santa Clara, California); that ANAM has renounced to benefit from this clause and has accepted arbitration by the AAA, Philadelphia; that an action is in progress before the Philadelphia Courts to impose arbitration by the AAA, Philadelphia on all parties;

In considering that ABS, as set out above, is bound by contractual relationships not only with AME but also with ANAM and AMKOR; that it was not, however, signatory to the contract of November 5, 1999 which included the arbitration clause; that it is therefore a question of determining whether this clause is applicable to it;

In considering that the "PEAVEY" order from the Court of Appeal stated that "in a standard series of merchandise transfer contracts, the international arbitration clause is invoked with the contractual action, unless there is reasonable proof of ignorance of this clause"; that it has already been established that, in this kind of situation, the contracts between the parties constituted a homogeneous chain;

In considering that, as a consequence, it is not credible than ABS, who were aware of the contractual relationship between its Belgian sister company AME and the American company AMKOR, could not have been unaware of the contract binding them which contained an arbitration clause; that it is completely normal current practice for international contracts signed by large groups such as ALCATEL to contain such clauses, and even more so if the companies concerned are American; that, in this sense, the Court of Appeal in Lyon, in its ruling of November 4, 2002 considered "that a company which knew the nationality and contractual practices of its contracting party and had regard for its professional standards could not justify having reasons not to know about the compromising clause inserted in the initial contract";

Moreover, considering that, in its order of February 28, 2003 on the appeal lodged by AMKOR and against the single judge ruling designating the legal expert, the Court of Appeal indicated that "the existence of an arbitration clause—*of which ABS does not contest that it had knowledge*—does not constitute an impediment to a request for expertise...";

Finally, in considering that ABS did not put forward an argument allowing its knowledge of the arbitration clause to be in doubt, its declaration stating that, in a large group in which each affiliate operates independently from each other cannot be sufficient, in this kind of situation, to serve as proof of reasonable ignorance of this clause on the part of ABS;

EDITION: May 25, 2004 – 3:05:55 PM

Commercial Court of Paris                          No. RG: 2002024616
Judgment of 05/19/2004
Eighth Chamber                                     CRG – PAGE 9

In considering that, resulting from the Court considering that the arbitration clause contained in the contract established between AMKOR and AME is opposable by ABS, and that the existence of Article 14 of the Civil Code cannot be found to be applicable, an arbitration clause validates the renunciation of taking advantage of legal privilege;

In considering that the arbitration clause has been found to be applicable, the other recourses taken by the parties will be judged inoperative;

In considering that, as a consequence, the Court will state that the declinatory plea raised by the defendants is admissible and well founded, it will declare itself incompetent and will refer the parties to appeal;

In considering that, acting on the requirements set out in article 700 of the NCPC, which appear to be fair and reasonable, and having regard to the state of advancement of the litigation, each party is made responsible for its non-recurring costs;

In considering that the expenses will be the responsibility, *in solidum*, of ABS and AGF.

**FOR THESE REASONS**

The Court, in giving its ruling as a first jurisdiction contradictory judgment :

- — States that the declinatory plea raised by the contending parties is admissible and well founded.

- — Declares itself incompetent.

- — Refers the parties to appeal.

- — Releases the parties from all their more extensive or contrary requests relating to the declinatory plea raised.

- — Sentences, *in solidum*, ALCATEL BUSINESS SYSTEMS and ASSURANCES GENERALES DE FRANCE IART, from whom are to be recovered by payment to the Clerk of the Court Office, the sum of € 108.52, including all taxes, and of which € 17.47 is value added tax.

Held and argued in open court in front of Messrs. MICHOUDET, LAUBIE, and Ms. LEPROVOST.

EDITION: May 25, 2004 – 3:05:55 PM

Commercial Court of Paris                          No. RG: 2002024616
Judgment of 05/19/2004
Eighth Chamber                                     CRG – PAGE 10

DELIBERATIONS handed down, in the presence of the general public, by the same magistrates as those who were presiding:

    Mr. MICHOUDET, Judge presiding over the hearing, Messrs. LAUBIE and BURIN des ROZIERS, Judges assisted by Ms. LELIEVRE, Clerk of the Court, the parties having been previously advised of this.

    The judgment was signed by the President of the deliberations and the Clerk of the Court.

Commercial Court of Paris
Judgment of 05/19/2004
Eighth Chamber

No. RG: 2002024616

CRG – PAGE 11

*By certified, compliant ISSUE,*
*delivered without final form*

[stamp:] COMMERCIAL COURT OF PARIS

[signature]

EDITION: May 25, 2004 – 3:05:55 PM

 **TRANSPERFECT | TRANSLATIONS**

### Declaration of Kristen Davidson

I, Kristen Davidson of TransPerfect Translations, Inc., was contacted by Wilson, Sonsini, Goodrich & Rosati to perform a translation from French into English. I have personal knowledge of the facts set forth below:

I hereby certify that the following document, pertaining to Amkor/Alcatel, are, to the best of my knowledge and belief, true and accurate translations from French into English:

- Amkor/Alcatel  "Tribunal de Commerce de Paris Jugement Prononce Le Mercred" document translation – 11 pages

ATLANTA
BOSTON
BRUSSELS
CHICAGO
DALLAS
DENVER
FRANKFURT
HONG KONG
HOUSTON
LONDON
LOS ANGELES
MIAMI
MINNEAPOLIS
NEW YORK
PARIS
PHILADELPHIA
SAN DIEGO
SAN FRANCISCO
SEATTLE
WASHINGTON, DC

I declare under penalty of jury under the laws of the State of California the foregoing is true and correct. Dated this 16th date of June, 2004.

Kristen Davidson, Declarant

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| AMKOR TECHNOLOGY, INC., a Delaware Corporation, )<br><br>Plaintiff/Petitioner, )<br><br>v. )<br><br>ALCATEL BUSINESS SYSTEMS, a French Corporation, ASSURANCES GENERALES DE FRANCE IART, a French Corporation, and ALCATEL MICROELECTRONICS N.V., a Belgian corporation )<br><br>Defendants/Respondents. ) | NO.: 02-3156<br><br>**CERTIFICATE OF SERVICE** |

I, Heather L. Hardy, declare:

I am employed in Santa Clara County. I am over the age of 18 years and not a party to the within action. My business address is Wilson Sonsini Goodrich & Rosati, 650 Page Mill Road, Palo Alto, California 94304-1050.

I am readily familiar with Wilson Sonsini Goodrich & Rosati's practice for collection and processing of correspondence for mailing with the United States Postal Service. In the ordinary course of business, correspondence would be deposited with the United States Postal Service on this date.

On this date, I served **NOTICE OF JUDGMENT OF COMMERCIAL COURT OF PARIS** on each person listed below, by placing the document(s) described above in an envelope addressed as indicated below, which I sealed. I placed the envelope(s) for collection and mailing with the United States Postal Service on this day, following ordinary business practices at Wilson Sonsini Goodrich & Rosati.

Thomas A. Leghorn, Esq.
Brett A. Scher, Esq.
Wilson, Elser, Moskowitz, Edelman & Dicker LLP
150 East 42nd Street
New York, NY 10017-5639

Louis J. Isaacsohn, Esq.
Wendy D. Testa, Esq.
Wilson, Elser, Moskowitz, Edelman & Dicker LLP
Independence Square West
The Curtis Center, Suite 1130 East
Philadelphia, PA  19106-3308

Patrick J. Loftus, Esq.
Duane Morris LLP
One Liberty Place
Philadelphia, PA  19103-7396

I declare under penalty of perjury that the foregoing is true and correct.  Executed at

Palo Alto, California on July 12, 2004.

Heather L. Hardy

C:\NrPortbl\PALIB1\HH1\2420588_1.DOC