# WILSON, ELSER, MOSKOWITZ, EDELMAN & DICKER LLP

150 East 42nd Street, New York, New York 10017-5639   Tel: (212) 490-3000   Fax: (212) 490-3038

*New York• Los Angeles • San Francisco • Washington, DC • Newark • Philadelphia • Baltimore • Miami • Chicago*
*White Plains, NY • Dallas • Albany, NY • San Diego • Houston • Garden City, NY • Boston • London*
*Affiliate Offices:  Paris • Berlin • Cologne • Frankfurt • Munich • Wiesbaden*
—
www.wemed.com

Thomas A. Leghorn
A Member of the Firm

email address:
leghornt@wemed.com

May 3, 2004

## VIA FED EX OVERNIGHT

Hon. Louis H. Pollak
United States District Court
Eastern District Of Pennsylvania
601 Market Street
16613 U.S. Courthouse
Philadelphia, PA  19106

Re:   Amkor v. Alcatel Microelectronics, et al.
Civ. No.        :      02-3156
Our File        :      01438.00006

Dear Judge Pollak:

Pursuant to the Court's Order dated April 26, 2004, defendants-respondents Alcatel Business Systems ("ABS") and Assurances Generales De France IART ("AGF") submit this letter brief regarding the current discovery dispute between the parties.  In an August 22, 2003 Order, the Court denied defendants-respondents' motion to dismiss the petition based upon lack of jurisdiction.  In denying the motion, the Court held that ABS, despite being a non-signatory to an agreement between plaintiff-petitioner, Amkor Technology, Inc. ("AMKOR") and non-party, Alcatel Microelectronics ("AME"), was bound by the arbitration clause contained in that agreement based upon a theory of equitable estoppel.  August 22, 2003 Order, p. 4.  After the Court's directive to serve an Answer, defendants-respondents served their limited discovery demands and one notice of deposition.

As detailed in our prior letter to the Court, this dispute arises out of the refusal of plaintiff-petitioner, Amkor Technology, Inc. ("AMKOR"), to respond to 13 out of the 16 limited document demands served by the defendants-respondents as well as AMKOR's refusal to appear for a 30(b)(6) deposition.  Copies of the demands and the deposition notice are annexed hereto. We believe that the defendants-respondents' request for discovery is straightforward and that the plaintiff-petitioner should be compelled to respond to each demand therein.[1]

During the pendency of the motion to dismiss, AMKOR represented to the Court that it provided a "direct benefit" to ABS as it created a "custom made" chip for ABS.  August 22,

---

[1]        We had previously agreed to withdraw Document Demand No. 14 in our communications with petitioner's counsel.  Based upon our prior conference call with the Court, it is our understanding that the petitioner no longer has an objection and will be providing a response to Demands Nos. 15 and 16.  Thus, these three demands are no longer in dispute.

Our File No. 01438.00006
May 3, 2004
Page 2

2003 Order, p. 6. Based upon plaintiff-petitioner's claims of a "direct benefit", this Court denied the defendants-respondents' motion to dismiss. August 22, 2003 Order, pp. 5–7. Defendants-respondents' position is that there was no "custom made" chip. Accordingly, defendants-respondents merely seek documents and testimony from the plaintiff-petitioner to refute Amkor's contention that it provided a "direct benefit" to ABS and created a "custom made" chip for ABS. Along these same lines, we will also be seeking the same documents and testimony from non-party AME.

As the Court will recall, we have not had the opportunity to conduct <u>any</u> discovery upon plaintiff-petitioner. Moreover, plaintiff-petitioner did not submit a single affidavit from even one of its employees or any documents from its files (barring the arbitration agreement) in opposition to the defendants-respondents' motion. Plaintiff-petitioner's position, however, is that the defendants-respondents are entitled to no discovery. While ABS has provided documents in response to plaintiff's demands and produced several witnesses for depositions, Amkor refuses to produce any documents and refuses to designate a 30(b)(6) witness. Thus, it is clear that the defendants-respondents have not had the opportunity to conduct discovery to support their defenses to the petition.

For the sake of brevity, we have attempted to group the defendants-respondents' demands together based upon the category of documents sought.

## <u>DOCUMENT DEMANDS NOS. 1, 6, 9, 10, AND 11</u>

The first set of document demands (Nos. 1 and 6) pertain directly to the petitioner's communications with non-party, AME, regarding the specific chips at issue. These demands primarily sought documents regarding the design, manufacturing, testing, and the subsequent sale of the semiconductors at issue from the petitioner to AME.

The second set of demands in the category, Demands Nos. 9, 10, and 11, sought documents concerning Amkor's allegation that it provided a "custom made" chip to ABS.[2] As the petitioner's allegations concerning the design, review, and testing of the "custom made" chip were the crux of the Court's invocation of the "direct benefit" analysis, defendants-respondents should be entitled to see what proof petitioner has of the manufacture of a "custom made" chip. Moreover, as this demand focuses on the conduct of the parties after the agreement was

---

[2]     In the case at bar, the issue of conferring a direct benefit is vastly different in the few cases dealing with the "estoppel" analysis in cases of the enforceability of an arbitration clause. For example, in <u>American Bureau of Shipping v. Tencara Shipyard S.P.A.</u>, 170 F.3d 349 (2d Cir. 1999), the alleged "direct benefit" was the certification which allowed for two very distinct benefits for one custom-built yacht -- lower insurance rates and the ability to sail under the French flag. Thus, the alleged benefits were clear-cut and not subject to differing interpretations. In the case at bar, however, the alleged "direct benefit" analysis is significantly more complex. Here there is no one single final end product (e.g., a yacht) but rather thousands of mass-produced mobile telephones distributed throughout Asia. Unlike <u>Tencara</u> where the Owners received the "direct benefit" of a unique one of a kind certification from the signatory to the arbitration agreement, here, the purported "custom made" chip was far from unique. In fact, the same "custom made" chips were procured by ABS from other chip manufacturers – a critical distinction. Thus, it is respectfully submitted that contrary to petitioner's position, resolving the "direct benefit" analysis in this case does require that the parties conduct discovery.

Our File No. 01438.00006
May 3, 2004
Page 3

executed, it is directly relevant in conducting the "estoppel" analysis. <u>See</u> <u>E.I. DuPont de</u>
<u>Nemours and Co. v. Rhone Poulenc Fiber and Resin Intermediates, S.A.S.</u>, 269 F.3d 187, 200, n.
7 (3rd Cir. 2001).

For example, Demand No. 9 sought documents pertaining to "sales or offers to sell the
'mobile telephone components' to parties other than AME." On the same note, Demand No. 10,
sought the same information with respect to any nearly identical chips to determine if the
"custom made" chip was slightly altered and then sold to others. The simple fact is that if the
petitioner designed a "custom made" chip as it contends, then there would be no sale to any other
entities other than AME. Accordingly, defendants-respondents should be entitled to see any
documents concerning sales of the same "mobile telephone components" to other entities. To
the extent that the terms of any other agreements (e.g., price) would be considered trade secrets
or privileged, we have always been willing to accept said documents in redacted form or after
submission to the Court for an *in camera* review.

We believe that Demand No. 11 is self-explanatory and critical to the resolution of this
litigation. If petitioner is to be heard to argue that it created a "custom made" chip for the direct
benefit of ABS, then the defendants-respondents should be allowed to review any documents
from the petitioner concerning the design, creation, invention, planning, invention, and/or
fabrication of the "mobile telephone components." For example, what documents are there in
Amkor's files to support their allegation that ABS designed the chips at issue.

## DOCUMENT DEMANDS NOS. 4 AND 5

Petitioner's refusal to respond to Demands Nos. 4 and 5 are amongst the most troubling.
Both of these demands seek documents directly related to the proposal, negotiation, approval,
acceptance, and execution" of the agreement that the petitioner has focused its entire case upon.
As this document serves as the sole basis for Amkor's demand for arbitration, we can not see
how petitioner can seriously object to providing these documents.

## DOCUMENT DEMANDS NOS. 2, 3 AND 8

Petitioner also refused to respond to Demands Nos. 2, 3, and 8. The demands were
limited solely to communications between the parties to this litigation. As the entire dispute in
the case at bar is whether a "direct benefit" was conferred by Amkor upon ABS or AGF, we
believe that at a minimum, we are entitled to see any communications between the <u>parties</u> to this
action regarding the subject matter of the litigation. Once again, these documents are critical to
any "direct benefit" analysis. <u>See</u> <u>DuPont</u>, <u>supra</u>. Accordingly, we have requested a response to
Demands Nos. 2, 3, 8.

## DOCUMENT DEMANDS NOS. 7, 12, AND 13

In Demand No. 7, defendants-respondents also sought documents concerning the sale of
other goods and/or services from Amkor to AME as we believe these documents will establish
the course of dealing between the parties and the potential sale of similar "custom-made" chips
to AME to be, in turn, sold to parties other than ABS. <u>See</u> Demand No. 7. Evidence of such

WILSON, ELSER, MOSKOWITZ, EDELMAN & DICKER LLP
1611713.1

Our File No. 01438.00006
May 3, 2004
Page 4

transactions would directly disprove the petitioner's claims that AME functioned as simply acting as a purchasing agent for ABS in its transactions with Amkor.

Demands Nos. 12 and 13 sought documents regarding the "failure" of the mobile telephone components. Once again these documents pertain to the allegations of a "custom made" chip. How the parties handled the "failure" and any interaction between them comes into play as it focuses on the conduct of the parties after the agreement was executed. See DuPont, supra. We have expressly advised petitioner's counsel that we limited these demands to general communications regarding the "failure" as opposed to specific technical data concerning the actual reasons for the failure. Contrary to the statements of petitioner's counsel, we have no intention of attempting to litigate the merit, or lack thereof, of the underlying dispute. Rather, the manner in which the dispute first arose and the entities who addressed the situation will afford insight as to who was the party involved in the agreement with Amkor. As with other sensitive documents, we have also indicated our willingness to accept documents in redacted form in an effort to resolve any disputes. Our efforts to resolve this dispute have all been rejected by petitioner.

While petitioner continually argues that it will not provide the documents sought by the respondents because these documents allegedly go to the merits of the underlying dispute between Amkor and the defendants-respondents, that argument is simply a red herring. Of course some of the documents critical to the issues regarding whether a "custom made" chip was produced and whether defendants-respondents received a "direct benefit" are going to overlap with documents that will pertain to the merits of the underlying dispute. The fact that there is some overlap is not a basis to refuse to produce documents. Moreover, no one is asking this Court to determine the merits of the underlying dispute and, therefore, petitioner's attempt to avoid discovery by claiming that responsive documents may also pertain to the underlying action is specious.

Moreover, to the extent that petitioner has taken the position that no further discovery is required, this argument completely disregards the fact that not a single piece of evidence or testimony has been elicited from the signatory to the agreement – Alcatel Microelectronics ("AME"). As the Court noted in its earlier decision, AME is no longer a "sister" company of ABS and, thus, there is no way for ABS to obtain any information or testimony from AME without judicial assistance. Until discovery from the petitioner is received and, at a minimum, the respondents are given the opportunity to elicit non-party discovery from AME, the case is not ready for a final adjudication.

We thank the Court for its time and consideration of our request.

Very truly yours,

WILSON, ELSER, MOSKOWITZ, EDELMAN & DICKER LLP

Thomas A. Leghorn

WILSON, ELSER, MOSKOWITZ, EDELMAN & DICKER LLP
1611713.1

Our File No. 01438.00006
May 3, 2004
Page 5

cc:    Ignacio E. Salceda, Esq.
       Wilson Sonsini Goodrich & Rosati
       650 Page Mill Road
       Palo Alto, CA.  94304

       Patrick J. Loftus, Esq.
       Duane Morris  LLP
       1650 Market Street, 39th Floor
       Philadelphia, PA 19103

       Wendy Testa, Esq. - WEMED-Pa.

UNITED STATES DISTRICT COURT EASTERN DISTRICT OF PENNSYLVANIA

------------------------------------------------------------------- x

AMKOR TECHNOLOGY, INC., a Delaware Corporation,

                Plaintiff/Petitioner,

                    v.

ALCATEL BUSINESS SYSTEMS,  a French Corporation,
ASSURANCES GENERALES DE FRANCE IART, a
French Corporation, and ALCATEL
MICROELECTRONICS N.V.,  a Belgian corporation.

                Defendants/Respondents.

------------------------------------------------------------------- x

Case No. 02-3156

**NOTICE OF DISCOVERY
AND INSPECTION**

       PLEASE TAKE NOTICE that defendants-respondents ALCATEL BUSINESS SYSTEMS and

ASSURANCES GENERALES DE FRANCE IART, by and through their undersigned counsel,

WILSON, ELSER, MOSKOWITZ, EDELMAN & DICKER LLP, demand that pursuant to Rules 26

and 34 of the Federal Rules of Civil Procedure plaintiff-petitioner produce the following documents

within thirty (30) days:

**DEFINITIONS AND INSTRUCTIONS**

    1.     The term "communication" means the transmittal of information (in the form of facts,

ideas, inquiries or otherwise).

    2.     The term "document" is defined to be synonymous in meaning and equal in scope to the

usage of this term in Federal Rule of Civil Procedure 34(a), including, without limitation, electronic or

computerized data compilations.  A draft or non-identical copy is a separate document within the

meaning of this term.

3.      When referring to a person, "to identify" means to give, to the extent known, the person's full name, present or last known address, and when referring to a natural person, additionally, the present or last known place of employment. Once a person has been identified in accordance with this subparagraph, only the name of that person need be listed in response to subsequent discovery requesting the identification of that person.

4.      When referring to documents, "to identify" means to give, to the extent known, the (i) type of document; (ii) general subject matter; (iii) date of the document; and (iv) author(s), addressee(s) and recipient(s).

5.      The terms "plaintiff" or "petitioner" and "defendant" or "respondent" as well as a party's full or abbreviated name or a pronoun referring to a party mean the party and, where applicable, its officers, directors, employees, partners, corporate parent, subsidiaries or affiliates.  This definition is not intended to impose a discovery obligation on any person who is not a party to the litigation.

6.      The term "person" is defined as any natural person or any business, legal or governmental entity or association.

7.      The term "concerning" means relating to, referring to, describing, evidencing or constituting.

8.      The terms "all" and "each" shall be construed as all and each.

- 2 -

9.    The connectives "and" and "or" shall be construed either disjunctively or conjunctively as necessary to bring within the scope of the discovery request all responses that might otherwise be construed to be outside of its scope.

10.    The use of the singular form of any word includes the plural and vice versa.

11.    As used herein, the terms "documents relating to" or "documents concerning" means documents containing, showing or relating, referring, reflecting or pertaining in any way, directly or indirectly, to and is meant to include, without limitation, all documents supporting, underlying, explaining or at any time attached, annexed or appended to or used in the preparation of, and all drafts of, any document called for by a request herein.

12.    The words "possession, custody or control" shall mean reasonable access to and actual and/or constructive possession of the subject matter of the request.

13.    The word "communicated" shall mean sent, transmitted, disclosed, conveyed, given, dispatched, disseminated, imparted, issued, submitted, delivered, faxed, mailed, telexed, downloaded, handed, or any other term or terms which indicate a transfer of possession, custody or control of an object between one person and another.

14.    Unless otherwise noted, these requests apply to the time period beginning on January 1, 1999 up to and including the present, and shall include documents prepared during that period and/or which relate to such period even though prepared or published prior to, or subsequent to that period.

- 3 -

107559.1

15.     All references to the "Petition" in this demand refer to the Petition dated May 22, 2002 filed in this matter.

16.     If a claim of privilege is asserted with respect to any document or oral communication responsive to a request or such document or communication is withheld on any other ground, provide the following information:

      a.     the date of the document or communication;

      b.     the identity of each individual who was an author, addressee, or recipient of the document;

      c.     a description of the topic or topics, or subject or subjects, addressed by the author of the document sufficient to demonstrate the basis of the claim of privilege;

      d.     nature of the privilege asserted or the ground on which the document is withheld; and

      e.     same information in subsections a-d for each enclosure listed on the document, if the enclosure is also withheld from production or its production number, if it is not withheld from production.

17.     If any document responsive to a document request has been lost or destroyed or is otherwise unavailable, describe and identify each such document by stating in writing: (i) the date, the author, the recipients of the original and all copies, any attachments or appendices, and the subject

- 4 -

matter; (ii) the circumstances under which such document was lost, destroyed or otherwise became unavailable; and (iii) the efforts undertaken to locate the document.

18.    Grounds for any objection to any portion of these document requests shall be stated with specificity and clarity.

19.    This request is deemed to be continuing in nature and in the event you become aware of or acquire in your possession, custody or control additional documents which are responsive, you are required to promptly produce them.

- 5 -

107559.1

## DEMANDS

1.     Any and all documents concerning communications between petitioner and defendant-respondent, Alcatel Microelectronics N.V. ("AME") regarding the "mobile telephone components" referenced in the Petition.

2.     Any and all documents concerning communications between petitioner and defendant-respondent, Alcatel Business Systems ("ABS") regarding the "mobile telephone components" referenced in the Petition.

3.     Any and all documents concerning communications between petitioner and defendant-respondent, Assurances Generales De France IART ("AGF") regarding the "mobile telephone components" referenced in the Petition.

4.     Any and all documents concerning the proposal, negotiation, approval, acceptance, and execution of the Agreement referenced in the Petition in this action (including but not limited to correspondence, internal e-mails, memorandum or telephone logs).

5.     Any and all copies of the Agreement including but not limited to drafts of the Agreement.

6.     Any and all documents concerning the sale or delivery of the "mobile telephone components" to AME as asserted in the Petition including all invoices, bills of lading, purchase orders, checks, wire transfer receipts or other indicia of payment and/or receipt.

7.     Any and all documents concerning the sale or delivery of any goods or services excluding the "mobile telephone components" to AME including all invoices, bills of lading, purchase orders, checks, wire transfer receipts or other indicia of payment and/or receipt.

107559.1

8.    Any and all documents concerning the sale or delivery of any goods or services excluding the "mobile telephone components" to ABS including all invoices, bills of lading, purchase orders, checks, wire transfer receipts or other indicia of payment and/or receipt.

9.    Any and all documents concerning petitioner's sales or offers to sell the "mobile telephone components" to parties other than AME.

10.    Any and all documents concerning petitioner's sales or attempts to sell "mobile telephone components" similar to those at issue in the Petition to third parties other than any of the defendants-respondents in this matter.

11.    Any and all documents concerning the design, creation, invention, planning, invention, and/or fabrication of the "mobile telephone components" at issue in the Petition (including to but not limited to any documents concerning prototypes of the "mobile telephone components" whether produced for AME or any other entity).

12.    Any and all documents concerning communications between petitioner and AME regarding the "failure" of the "mobile telephone components" as referenced in paragraph "12" of the Petition.

13.    Any and all documents concerning communications between petitioner and ABS regarding the "failure" of the "mobile telephone components" as referenced in paragraph "12" of the Petition.

14.    Any and all documents concerning the specific location and volume of output and/or revenue generated from all of Amkor's manufacturing facilities outside the United States.

2

107559.1

15.    Any and all documents concerning petitioner's allegation that "AME and ABS were affiliated companies under the corporate parent Alcatel" as alleged in paragraph "14" of the Petition.

16.    Any and all documents concerning petitioner's allegation of "a unity of interest and ownership among ABS, AME and Alcatel" as asserted in paragraph "22" of the Petition.

Dated: January 21, 2004

Respectfully submitted,

WILSON, ELSER, MOSKOWITZ, EDELMAN & DICKER LLP

By:    _____
       Louis J. Isaacsohn, Esquire
       Attorneys for Defendant
       ASSURANCES GENERALES DE FRANCE IART
       Independence Square West
       The Curtis Center, Suite 1130 East
       Philadelphia, PA 19106-3308
       (215) 627-6900

3

107559.1

UNITED STATES DISTRICT COURT EASTERN DISTRICT OF PENNSYLVANIA

------------------------------------------------------------------- x

AMKOR TECHNOLOGY, INC., a Delaware Corporation,

                    Plaintiff/Petitioner,

                v.

ALCATEL BUSINESS SYSTEMS, a French Corporation,
ASSURANCES GENERALES DE FRANCE IART, a
French Corporation, and ALCATEL
MICROELECTRONICS N.V., a Belgian corporation.

                    Defendants/Respondents.

------------------------------------------------------------------- x

Case No. 02-3156

**NOTICE OF DEPOSITION**

      PLEASE TAKE NOTICE that, pursuant to Rule 30(b)(6) of the Federal Rules of Civil

Procedure, defendants-respondents ALCATEL BUSINESS SYSTEMS and ASSURANCES

GENERALES DE FRANCE IART, by and through their undersigned counsel, WILSON, ELSER,

MOSKOWITZ, EDELMAN & DICKER LLP, will take the deposition upon oral examination of the

plaintiff AMKOR TECHNOLOGY, INC. ("AMKOR"), at the offices of Wilson, Elser, Moskowitz,

Edelman & Dicker LLP, The Curtis Center, Suite 1130 East, Independence Square West, Philadelphia,

PA before a stenographic reporter duly authorized by law to administer the oath, commencing on March

30, 2004 at 9:30 a.m. and continuing thereafter until completed.

      AMKOR shall designate, pursuant to Rule 30(b)(6) of the Federal Rules of Civil Procedure, one

or more persons to testify on its behalf. Such person or persons designated by AMKOR shall have

knowledge concerning the subject matters listed in Schedule "A".

      If more than one person is designated by AMKOR to testify on its behalf, defendants-

respondents request that AMKOR notify it in advance of the matters on which each designated person

shall testify.

107556.1

Counsel are invited to attend and participate as provided for under the Federal Rules of Civil

Procedure.

Dated: January 21, 2004

                      Respectfully submitted,

                      WILSON, ELSER, MOSKOWITZ, EDELMAN & DICKER LLP

By: _____
                      Louis J. Isaacsohn, Esquire
                      Attorneys for Defendant
                      ASSURANCES GENERALES DE FRANCE IART
                      Independence Square West
                      The Curtis Center, Suite 1130 East
                      Philadelphia, PA 19106-3308
                      (215) 627-6900

107556.1

### SCHEDULE A

1.     The proposal, negotiation, approval, acceptance, and execution of the "Agreement" referenced in the Petition in this action.

2.     The design, creation, invention, planning, invention, and/or fabrication of the "mobile telephone components" at issue in the Petition (whether produced for AME or any other entity).

3.     Any communications between petitioner and defendant-respondent, Alcatel Microelectronics N.V. ("AME") regarding the "mobile telephone components" referenced in the Petition.

4.     Any communications between petitioner and defendant-respondent, Alcatel Business Systems ("ABS") regarding the "mobile telephone components" referenced in the Petition.

5.     Any communications between petitioner and defendant-respondent, Assurances Generales De France IART ("AGF") regarding the "mobile telephone components" referenced in the Petition.

6.     The sale or delivery of any goods or services other than the "mobile telephone components" to AME.

7.     The sale or delivery of any goods or services excluding the "mobile telephone components" to ABS.

8.     Petitioner's sales or offers to sell the "mobile telephone components" to parties other than AME or ABS.

3

107556.1