# WILSON, ELSER, MOSKOWITZ, EDELMAN & DICKER LLP

150 East 42nd Street, New York, New York 10017-5639  Tel: (212) 490-3000  Fax: (212) 490-3038

*New York • Los Angeles • San Francisco • Washington, DC • Newark • Philadelphia • Baltimore • Miami • Chicago • White Plains, NY*
*Dallas • Albany, NY • San Diego • Houston • Garden City, NY • Boston • McLean, VA • London*
*Affiliate Offices: Paris • Berlin • Cologne • Frankfurt • Munich*

www.wemed.com

April 20, 2004

VIA FACSIMILE (215) 580-2133

Hon. Louis H. Pollak
United States District Court
Eastern District Of Pennsylvania
601 Market Street
16613 U.S. Courthouse
Philadelphia, PA  19106

**FILED**

AUG 1 5 2007

MICHAEL E. KUNZ, Clerk
By_____Dep. Clerk

Re:  Amkor Technology, Inc. v. Alcatel Business Systems, et al.
     Case No.    :   02-3156
     Our File No. :   01438.00006

Dear Judge Pollak:

In response to your Honor's directives during our April 6, 2004 telephone conference call, the parties have prepared this joint submission regarding their respective resolution strategies. As the defendants indicated during the call, defendants-respondents Alcatel Business Systems ("ABS") and Assurances Generales De France IART ("AGF") have served document demands (16 in total) and a request for a 30(b)(6) deposition upon plaintiff-petitioner, Amkor Technology, Inc. ("AMKOR"). As we indicated in the call, AMKOR has objected to 14 of the 16 demands. Over the past two weeks we have conducted a "meet and confer" between the parties but, unfortunately, have been unable to resolve our dispute regarding these discovery issues. Copies of our correspondence are annexed hereto.

Accordingly, with the Court's permission, the parties would like to present their respective positions in the form of letter briefs to the Court with the defendants/respondents submitting their brief no later than May 4, 2004 and plaintiff/petitioner submitting its responsive brief by May 14, 2004. After submission of the briefs, we would request a telephone conference or an appearance before the Court, at its earliest convenience, to resolve the current impasse on discovery. Once the Court has ruled on these discovery issues, we can set forth a schedule for the completion of all discovery.

1603362.1

Page 2

If you have any questions, please do not hesitate to contact either of the undersigned.

Sincerely,

WILSON, ELSER, MOSKOWITZ,
EDELMAN & DICKER LLP

Brett A. Scher, Esq.

WILSON SONSINI GOODRICH & ROSATI

Clay Basser-Wall, Esq.

# WILSON, ELSER, MOSKOWITZ, EDELMAN & DICKER LLP
3 Gannett Drive, White Plains, NY 10604   Tel: (914) 323-7000   Fax: (914) 323-7001

New York • Los Angeles • San Francisco • Washington, DC • Newark • Philadelphia • Baltimore • Miami • Chicago
White Plains, NY • Dallas • Albany, NY • San Diego • Houston • Garden City, NY • Boston • London
Affiliate Offices: Paris • Berlin • Cologne • Frankfurt • Munich

www.wemed.com

*Thomas A. Leghorn*
*A Member of the Firm*

*e-mail address:*
*leghornt@wemed.com*

April 12, 2004

**VIA EMAIL (ISalceda@wsgr.com)**
**AND REGULAR MAIL**

Ignacio E. Salceda, Esq.
Wilson Sonsini Goodrich & Rosati
650 Page Mill Road
Palo Alto, CA 94304

>    Re:   Amkor v. Alcatel Microelectronics, et al.
>          Civ. No.        :   02-3156 (E.D.Pa.)
>          Our File No.    :   01438.00006

Dear Mr. Salceda:

Further to our telephone conference, this letter will further expand upon the basis for the document demands we have forwarded to Amkor. We are hopeful that this will assist in resolving the objections Amkor has raised to these demands.

First, I want to draw your attention to Amkor's opposition to the defendants' motion to dismiss and the Court's August 22, 2003 Order denying the motion. As you will recall, the Court denied the defendants' motion based upon the assertion by Amkor that "ABS accepted the benefit of Amkor's custom chip manufacturing" (August 22, 2003 Order, p. 6). The Court relied upon what Amkor described as a "litany of facts." Included in those "facts" were Amkor's allegations that "ABS jointly designed the semiconductors at issue with AME . . . ABS knew that AME, which was unable to manufacture digital (as opposed to analog) semiconductors, would have to have another supplier manufacture the semiconductors . . . ABS reviewed and approved the final design of the semiconductors before the design was sent to Amkor . . . ABS tested prototypes of the semiconductors after they had been manufactured by Amkor . . . AME could not alter the specifications of the semiconductors without ABS's approval . . . AME performed the same design and engineering services for ABS (designing what is called the "back end" of the chip since 1994) . . ."

Based upon Amkor's allegations (and the Court's subsequent reliance thereon) regarding the design, manufacturing, testing, and sale of the semiconductors at issue, documents concerning Amkor's communications with AME regarding the chips and the aforementioned issues are clearly at issue. See Demands Nos. 1, 6. Moreover, as Amkor has asserted that they

691567.1

Ignacio E. Salceda, Esq.
April 12, 2004
Page 2

provided a "custom made" chip to AME, we are entitled to any documentation concerning the design and sale of the same or similar chips to other entities as these documents will confirm or deny the veracity of Amkor's assertion. See Demands Nos. 9, 10, 11.

Moreover, any communications between the parties to this action -- ABS, AGF and Amkor -- concerning the sale of these chips or other devices are directly relevant to the Court's "direct benefit" analysis. Accordingly, we would expect a response to Demands Nos. 2, 3, 8.

We are also seeking documents concerning other sales from Amkor to AME as we believe these documents will establish the course of dealing between the parties and the potential sale of these "custom-made" chips to AME to be, in turn, sold to parties other than ABS. See Demand No. 7. As ABS does not own or control AME, and never did own or control AME, we must review Amkor's records to determine the extent of any documents within its possession concerning AME before we are forced to engage in non-party discovery of AME.

With respect to Demand Nos. 12 and 13, seeking documents regarding the "failure" of the components, we are willing to limit that demand to general communications regarding the "failure" as opposed to specific technical data concerning the actual reasons for the failure. We wish to determine who was having the dialogue as to the problems that arose with the chips. The deposition testimony of the ABS witnesses was uniform that no one from ABS had any direct communication with Amkor until well after the problem arose. Therefore, it is of greater interest to us to determine who among the various companies were discussing the situation rather than trying to determine who was right concerning the root cause of the failure of the chips. As such, we would accept, for purposes of this action, documents in redacted form, if that will help facilitate the exchange of information.

As we discussed, we are willing to withdraw Demand No. 14 at this time in an effort to advance the litigation in this case.

Finally, I can not see why Amkor would object to Demand Nos. 4, 5 as they merely seek documents concerning the agreement which is the fundamental basis for Amkor's demand for arbitration. Accordingly, we would expect a complete response to these demands.

We look forward to hearing from you in due course.

Very truly yours,

WILSON, ELSER, MOSKOWITZ, EDELMAN & DICKER LLP

Thomas Leghorn

TAL/lp

 Wilson Sonsini Goodrich & Rosati
PROFESSIONAL CORPORATION

650 Page Mill Road
Palo Alto, CA 94304-1050
PHONE 650.493.9300
FAX 650.493.6811
www.wsgr.com

April 16, 2004

**VIA EMAIL AND U.S. MAIL**

Thomas A. Leghorn
Wilson, Elser, Moskowitz, Edelman & Dicker LLP
3 Gannett Drive
White Plains, NY 10604

Re: *Amkor Technology, Inc. v. Alcatel Business Systems, et al.,*
Civ. No. 02-3156 (E.D. Pa.)

Dear Mr. Leghorn:

I am writing in response to your letter of April 12, 2004, in which you set forth the reasons why you believe Alcatel Business Systems ("ABS") and Asssurances Generales De France Iart ("AGF") are entitled to the documents they have requested from Amkor Technology, Inc. ("Amkor" or the "Company") in their Notice of Discovery and Inspection.

**The ABS/AGF Document Requests**

First of all, as I attempted to make clear in our discussion last week, Amkor believes that the document requests go far beyond the sole issue in this case, whether ABS and AGF must arbitrate their dispute. Rather, the requests go to the question of the merits of the dispute, an issue that must be left to the arbitrator. It is clear that ABS and AGF are seeking to draw out this very narrow litigation. Our responses to the specific points in your letter are as follows:

With respect to Demands Nos. 1 and 6, you letter asserts that Amkor has made "allegations" regarding ABS's participation in the design and testing of the semiconductors that Amkor sold to Alcatel Microelectronics N.V. ("AME"). *See* April 12 letter at 1. Based upon these "allegations," you claim that Amkor has placed its communications with AME "at issue" and, therefore, ABS and AGF are entitled to all documents regarding Amkor's communications with AME. *See id.*

Amkor, however, has not placed its communications with AME "at issue." Significantly, Amkor has not relied on any communications between the Company and AME to support its argument that ABS participated in the design and testing of the semiconductors. Instead, the Company's position that ABS was involved in the development of the semiconductors is based solely on testimony provided by Dominique Castel, Herve Karabadjakian, and Sylvie Lallement – all of whom were ABS employees. *See* Amkor's Supplemental Memorandum Regarding

**Wilson Sonsini Goodrich & Rosati**
PROFESSIONAL CORPORATION

Thomas A. Leghorn, Esq.
April 16, 2004
Page 2

Jurisdiction at 2-3. Accordingly, Amkor will not produce documents in response to Demands Nos. 1 and 6 because these demands are seeking documents that have not been placed at issue by Amkor and are not relevant to any claim or defense in this litigation.

With respect to Demands Nos. 9, 10, and 11, you claim that Amkor has asserted that it provided a "custom chip" to AME. *See* April 12 letter at 1-2. Consequently, you argue that ABS and AGF are entitled to "any documents concerning the design and sale of the same or similar chips to other entities as these documents will confirm or deny the veracity of Amkor's assertion." *See id* at 2.

Notwithstanding the allegations in your letter, the sole basis for Amkor's assertion that it provided a "custom chip" to ABS is testimony obtained from ABS's own employees. *See* Amkor's Supplemental Memorandum Regarding Jurisdiction at 9. Thus, the documents requested by Demands Nos. 9, 10, and 11 will not "confirm or deny the veracity of Amkor's assertion" and Amkor will not produce documents in response to these requests.

Your letter also asserts that ABS and AGF are entitled to the documents requested by Demands Nos. 2, 3, and 8 because any communications between ABS, AGF, and Amkor regarding the sale of "these chips or other devices" are directly relevant to the Court's "direct benefit" analysis. *See* April 12 letter. The Court, however, has already rejected your position. As Judge Pollak explained in his August 22, 2003 Order:

> Even if one assumes *arguendo* that ABS did not inject itself into the communications between Amkor and AME, the *Tencara* case shows that, so long as a non-signatory has received a direct benefit from a contract, it is not essential that the non-signatory be shown to have interacted regularly with the signatory that seeks to enforce the arbitration clause. . . . Therefore, ABS's insistence that it had insubstantial direct contact with Amkor carries little force in suggesting a result different from that reached in *Tencara.*

*See* August 22, 2003 Order at 7. Because the Court has already recognized that any communications (or lack thereof) between ABS, AGF, and Amkor are not relevant to issue of whether ABS received a "direct benefit," Amkor will not produce documents in response to Demands Nos. 2, 3, and 8.

Similarly, Amkor will not produce documents in response to Demands Nos. 12 and 13. Although you assert that ABS and AGF are merely attempting to establish that "no one from ABS had any direct communication with Amkor until well after the problem [with the chips] arose," the Court has already held that the absence of any such communications does not have

C:\WrPortbl\PALIB1\CBW\2432392_1.DOC (6977)

Wilson Sonsini Goodrich & Rosati
PROFESSIONAL CORPORATION

Thomas A. Leghorn, Esq.
April 16, 2004
Page 3

any bearing on the issue of whether ABS received a "direct benefit" from the agreement between Amkor and AME. *See* August 22, 2003 Order at 7. Accordingly, Demands Nos. 12 and 13 are seeking documents that are not relevant to this litigation.

With respect to Demand No. 7, you claim that "documents concerning other sales from Amkor to AME" will establish "the course of dealing between the parties and the potential sale of these 'custom-made' chips to AME to be, in turn, sold to parties other than ABS." *See* April 12 letter at 2. However, the course of dealing between Amkor and AME concerning other products clearly has no bearing on the course of dealing between Amkor and AME concerning the specific semiconductors that are at issue in this litigation. Also, as the Court recognized in its August 22, 2003 Order, the question of whether ABS and AGF should be compelled to arbitrate will be determined by ABS's participation in the design and testing of the chips at issue and the relationship between ABS and AME. Consequently, any documents concerning other business transactions between Amkor and AME (if any) are simply not relevant to the issue in this litigation.

Further, with respect to Demands Nos. 4 and 5, ABS and AGF have never contested the validity of the manufacturing services agreement between Amkor and AME, nor have they contested the Court's interpretation of the arbitration provision in the agreement. Instead, ABS and AGF have merely taken the position that they are not bound by the arbitration provision because (1) ABS did not participate in the development of the chip at issue; and (2) ABS did not have a close relationship with AME. Accordingly, documents "concerning" the agreement between Amkor and AME (including drafts of that agreement) are simply not relevant to the narrow issue before the Court.

Finally, the agreement between Amkor and AME contains an integration clause. *See* Section 17.3 of the Manufacturing Services Agreement between Amkor and AME. Because the agreement is clear on its face (and the Defendants have not argued to the contrary), ABS and AGF do not have any need for parol evidence and/or previous drafts of the agreement in this case.

### Amkor's Additional Discovery Requests

Amkor believes that all of the discovery necessary for a resolution of this case has already been conducted. Accordingly, we are willing to submit the issue of whether ABS and AGF must arbitrate their dispute to the Court without further discovery. However, if ABS and AGF insist on proceeding with further discovery in this case, please be advised that Amkor will seek additional discovery from Alcatel S.A. ("Alacatel") and its affiliated companies, as well as AME in connection with this litigation.

**Wilson Sonsini Goodrich & Rosati**
PROFESSIONAL CORPORATION

Thomas A. Leghorn, Esq.
April 16, 2004
Page 4

    Although we are still in the process of determining the precise documents and/or testimony that we would request, we would definitely ask for additional information on the following topics: (1) Alcatel's sale of AME to ST Microelectronics, including any communications and/or agreements concerning this dispute; (2) Alcatel's corporate policies and practices related to the dealings between and among its subsidiaries, including purchasing, product design and ownership of intellectual property; and (3) AME's former role in the Alcaltel conglomerate.

    I will be out of the office until next Friday. In the interim, please contact my associate, Clay Basser-Wall, at (650) 849-3222 if you would like to discuss any of these issues in greater detail.

Very truly yours,

WILSON SONSINI GOODRICH & ROSATI
Professional Corporation

Ignacio Salcedo (CBW)

Ignacio E. Salceda

Cc: Patrick Loftus, Esq.